PATTERSON *v.* SAYERS, d/b/a THE CONCORD HOTEL.

No. 39499          March 16, 1955          78 So. 2d 467

*L. C. Gwin,* Natchez, for appellant.

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellee.

Roberds, P. J.

Mrs. Patterson brought this action against Mr. Sayers to recover money damage for injuries she claims to have received when she fell in the hotel lobby of the Concord Hotel in Natchez, Mississippi, which fall, she avers, was the result of the failure of Mr. Sayers, operator of the Hotel, to use reasonable diligence to maintain a reasonably safe place for passage through that lobby. When Mrs. Patterson rested her case the learned trial judge instructed the jury to return a verdict for Mr. Sayers, which was done, and judgment was entered accordingly. From that action Mrs. Patterson appeals here.

The questions involved are: (1) the character of the relation which existed between the parties; and (2) the duty owing by Mr. Sayers to Mrs. Patterson. Mrs. Patterson says the testimony would have justified the finding by the jury that she was an invitee on the Hotel premises and that Sayers owed her the duty to use ordinary care to have the premises in a reasonably safe condition for use by her and that Sayers violated his duty in that respect, resulting in her injury.

This is a summary of the testimony on the stated questions. Mrs. Patterson testified that on October 2, 1951, the date of her injury, she resided in Natchez, Mississippi. She was fifty-six years of age. She was an employee of the Mississippi Automobile Club, at Natchez, an affiliate of "AAA." Her employer furnished to its members various and useful travel information, as to hotels, roads, eating places, legal services, etc. Mr. Sayers was a member of the Natchez branch. Indeed, he was the organizer thereof. He became a member in 1948 and had been a member since that time. Mrs. Patterson, in her capacity as an employee, had sent a number of guests to the Concord Hotel. However, on the day of her accident Mr. Sayers had not paid his renewal membership, although he had in his possession his credentials and was yet a member. She called Mr. Sayers about his renewal membership and he told her to come to see him that afternoon at his office, which was in the lobby of the Concord Hotel, then being operated by him. Mr. Sayers knew that the business about which she wished to see him was their mutual interest in his MAC membership. At the appointed time she proceeded to Mr. Sayers' office.

The Concord Hotel faces west on South Commerce Street. There is a step-up of about six inches as one enters the Hotel from the street. She opened the Hotel door, and, just as she got inside, she started slipping on the floor; she half caught herself and slipped again and fell to the floor, receiving severe injuries. The spot where she slipped and fell looked considerably darker than the adjoining floor of the lobby. It had a dull appearance. That covered a space of some three by four feet. The heel of her shoe made an imprint in the substance on the floor. The floor where she fell appeared not to be properly buffed. Mrs. Myrtle Taylor, an employee of Sayers at the telephone and desk in the lobby of the Hotel, ran to her and gave aid. She was helped to her feet and then seated. Mr. Sayers came out

of his office. They went back into the office for about five minutes. Mr. Sayers gave her a check for his MAC membership and assisted her in leaving his office and the Hotel, and offered to carry her home or to a doctor in his automobile. She suffered severe injuries to her head, spine, and ankle. A number of doctors examined and attended her and the severity of her injuries were attested by these doctors, whose testimony we deem it unnecessary to set out in view of the questions under consideration.

Mrs. Myrtle Taylor testified that at that time she was employed by Mr. Sayers. Her duties were to receive guests at the hotel and operate the telephone switchboard. Mr. Sayers' office was a few feet from her desk. To get to his office it was necessary to come into the hotel and go across the lobby. She was on duty when Mrs. Patterson fell. She was behind the registration desk. She saw Mrs. Patterson enter the front door and fall. This is her description of the fall; "Well, she just stepped in the door with her hand on the door and she helt it, but her foot slipped and she kept holding to the door for a second, I would say, and she was slipping, so she let go of the door and she just slipped for two or three feet and she kind of straightened and may be made a step and she slipped again and then fell." She rushed to Mrs. Patterson and assisted her in getting up. Mrs. Patterson sat on a settee in the lobby for a few moments. Her ankle was swelling rather badly and she was in much pain. In explaining the condition of the floor this witness said Mrs. Patterson skidded about three feet, then straightened up and then skidded again. The heel of Mrs. Patterson's shoe left two skid marks — one about three feet; then she straightened up and then skidded again. She said "There was a little mark in two different places about as wide as a matchstick, not as wide as the heel of a shoe. There were two dull spots in the two places she slipped." On cross-examination she said the dull place where Mrs. Patterson slipped

was about two and a half by three feet, and the mark made on the floor was about the size of a thumbnail. The first heel mark started about the first step inside the hotel door; the second started about two feet further to the inside of the lobby. The length of the two marks together, she said, was about five or six feet. In another place she said the dull spot on the floor, where Mrs. Patterson slipped, was some two to two and a half feet across. She said it had been some two weeks since the floor was waxed, but that it was water-mopped twice a day — about 8:30 in the morning and at 6:30 in the evening. The day of the accident it had been mopped in the morning but not in the evening. Mr. Sayers came out of his office with Mrs. Patterson and asked to take her to a doctor but she said she had her automobile and could make it. Witness had been working at the Hotel for thirteen months. She said many people had passed through the lobby since it had been waxed. However, she also said that she herself had once slipped on the lobby floor and almost fallen.

Mrs. Virginia Dallas had preceded Mrs. Taylor as an employee of Mr. Sayers. They did the same kind of work. Mrs. Dallas testified she worked at the Concord Hotel about a year; left to work for Mr. Sayers at another place and then came back to the Concord. She said the lobby floor was composed of asphalt tile. The Hotel changed porters often. They were not required to have any special training in mopping and waxing and keeping the floor of the lobby. They were told to put wax on the floor and buff it. It was a part of her duties to see that the lobby floor was waxed and buffed. She said the porters often failed to wax and buff the floor properly; that she would often put a light on the floor to detect improper waxing and buffing. She would frequently have the servants rewax and rebuff the floor "because the buffer is very short and you can miss lots of places." It is necessary to put the light on the wax at a certain angle to notice the unbuffed spots. The

Hotel often changed porters once a week. When she hired porters she made no inquiry as to whether they knew anything about waxing or buffing floors. She and Sayers both employed porters. She said she tried to make the servants wax and buff the floors properly. She gave this testimony: "Q. Had you seen other persons slip on the floor? A. Yes. Q. During your last tenure there? A. Yes, I have. Q. Were the occasions when you saw other persons slip on the floor frequent or infrequent? A. Well, not too often."

Mr. Fenner Parham, a brother-in-law of Mrs. Patterson, testified that he was fifty-eight years of age, engaged mainly in the insurance business and was also a Christian minister. One of his insurance agents lived at the Concord Hotel. He was at the Hotel about noon before Mrs. Patterson later fell. He testified that as he entered the front door leading into the lobby, he slipped on this same floor; that he "slid" some three or four feet on one foot, caught himself, and then slipped on the other foot but did not fall to the floor. He remarked to people in the lobby " * * * that somebody is going to break their neck on this floor." He said there was something on the floor but his testimony is indefinite as to what it was. He said on this point, "I don't believe there was any foreign substance other than whatever goes in wax to make it look nice and smooth and polished, whatever you would call it."

In our view this testimony would have justified a finding by the jury that Mrs. Patterson was an invitee into the lobby of the Hotel. In Nowell v. Harris (Miss.) 68 So. 2d 464, this Court said: "An invitee is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage." Here Mr. Sayers was a member of the Mississippi Automobile Club of Natchez. He then had in his possession his credentials evidencing such membership. He was a few days

delinquent in payment of his duties. Mrs. Patterson called him about that and was told, at least in effect, to see him at his office. His office was in the lobby of the Hotel. Mrs. Patterson had to go through that lobby to get to that office. Mr. Sayers knew that. Contacting Mr. Sayers at his office was the ultimate arrangement between the parties. As a matter of fact, the contact was made and Mr. Sayers paid to Mrs. Patterson at his office the automobile association dues. We repeat, the jury could have found, under the evidence, that Mrs. Patterson was an invitee into the lobby of the hotel where she suffered her injuries.

Now, as to the duty Mr. Sayers owed Mrs. Patterson, it seems to be settled that the operator of premises is under duty to exercise reasonable diligence to keep such premises in a reasonably safe condition for use by an invitee. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858; Sears, Roebuck & Co. v. Burke, 208 Miss. 306, 44 So. 2d 448; Louisiana Oil Co. v. Davis, 172 Miss. 126, 158 So. 792; Wilbourn v. Charleston Cooperage Co., 127 Miss. 290, 90 So. 9; Montgomery Ward & Co., Inc. v. Windham, 195 Miss. 848, 16 So. 2d 622; Western Union Telegraph Co. v. Blakely, 162 Miss. 859, 140 So. 336; Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447; 38 Am. Jur., p. 754, Sec. 96.

It is an undisputed fact that Mrs. Patterson did slip and fall on the lobby floor. It is also a fact that she fell because she slipped on that floor. It is undisputed, as the record now stands, that she fell because of the condition of the floor. She and others testified that the place where she slipped was of a different color from the adjacent floor. That place was dark. It covered some three to four feet. The heel of her shoe cut a groove into whatever substance was on the floor. Certainly the jury could have found that there was some kind of substance on the floor which caused her to fall. The jury could also have concluded that those who worked-over the floors had no special training in that

work and that often the floors were not properly waxed and buffed. While the floors had not been waxed and buffed for several days, they were washed and mopped twice each day. It was not necessary that Mrs. Patterson show the exact nature of the substance which caused her to slip. All she had to do was to prove circumstances from which the jury might reasonably conclude that there was a foreign substance on the floor which caused her to slip and fall. No one claims that Mrs. Patterson was not using proper care for her own protection. Indeed, it is not contradicted that when she first slipped she caught the side of the door in an effort to prevent falling. We might further set out details and give reasons why a jury, as reasonable men could have concluded from all the facts and circumstances here that reasonable diligence and care to have the lobby floor in reasonably safe condition had not been exercised; but we think that conclusion is evident from what has been said. That is especially true where, as here, it is shown that other persons had slipped on this same floor in the same manner as did Mrs. Patterson, including a servant of Mr. Sayers whose duty it was to keep the floor in proper condition. Of course, the facts, when fully shown, may not establish that to be the fact. █ █ However, for purpose of this demurrer, all the facts shown, with the reasonable inferences which may be drawn therefrom, are accepted as established.

Reversed and remanded.

*Lee, Arrington, Ethridge,* and *Gillespie, JJ.,* concur.