247 Miss. 575 (1963)
156 So.2d 734
MISSISSIPPI WINN-DIXIE SUPERMARKETS, INC.
v.
HUGHES
No. 42752.
Supreme Court of Mississippi.
October 14, 1963.
Snow, Covington, Shows & Watts, Meridian, for appellants.
*581 Ethridge, Minniece & Bourdeaux, Thomas R. Jones, Meridian, for appellee.
*583 ETHRIDGE, J.
Mrs. Fred J. Hughes, appellee, was injured on June 7, 1961, in a fall when she slipped on some dry vermicelli (edible paste smaller than spaghetti) in a self-service grocery store owned by appellant, Mississippi Winn-Dixie Supermarkets, Inc. She sued Winn-Dixie and its store manager, J.R. Glass, in a tort action, and received a jury verdict and judgment in the Circuit Court of Lauderdale County, awarding $40,000 damages. This appeal involves particularly the sufficiency of the evidence to support the verdict and the amount of damages. We affirm the judgment.
(Hn 1) Mrs. Hughes was an invitee. The proprietor of a store, office, or similar place of business owes to persons present on the premises as invitees the duty of exercising ordinary, reasonable care to see that the portions of the premises which may be expected to be used by invitees are reasonably safe. Hence the proprietor is under the duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purposes of the invitation. Gulfport Winn-Dixie, Inc. v. Taylor, 149 So.2d 485 (Miss. 1963); Elias v. New Laurel Radio Station, Inc., 146 So.2d 558 (Miss. 1962); Seymour v. Gulf Coast Buick, Inc., 152 So.2d 706 (Miss. 1963); Prosser, The Law of Torts (2d ed. 1955), p. 459; 2 Harper & James, The Law of Torts (1956), § 27.12, p. 1487; Anno., Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall Due to Presence of Litter or Debris on Floor, 61 ALR2d 6, 13 (1958); Anno., 62 ALR2d 6 (1958).
(Hn 2) Generally the liability of a proprietor in failing to render the premises reasonably safe, or failing to warn invitees of existing dangers, must be predicated upon the proprietor's superior knowledge concerning *584 the danger. With respect to the necessity of evidence concerning notice of the dangerous floor condition, "there are two rules of fundamental significance. (Hn 3) The first of these is that where the floor condition is one which is traceable to the proprietor's own act  that is, a condition created by him or under his authority  or is a condition in connection with which the proprietor is shown to have taken action, no proof of notice is necessary.
"Thus, it has been said that matters as to notice, including questions as to the length of time the dangerous condition existed are eliminated where it appears that the condition was created by defendant or persons for whose conduct he is responsible." Anno., 61 ALR2d at 24.
(Hn 4) The second rule, in contrast with that applicable to a floor condition resulting from the act of the proprietor, is this: "... where it appears that a floor in a store or similar place of business has been made dangerous by litter or debris present thereon, and that the presence of the litter or debris is traceable to persons for whom the proprietor is not responsible, proof that the proprietor was negligent in relation to the floor condition requires a showing that he had actual notice thereof, or that the condition existed for such a length of time that, in the exercise of reasonable care, he should have known of it." Anno., 61 ALR2d at 26; 2 A.L.I., Rest. of Torts, § 343; 38 Am. Jur., Negligence, § 136; 65 C.J.S., Negligence, §§ 45, 51.
(Hn 5) In both types of cases, negligence of the defendant and notice to him may be found from circumstantial evidence of adequate probative value. In short, the plaintiff may prove circumstances from which the jury might conclude reasonably that the condition of the floor was one which was traceable to the proprietor's own act or omission, in which no proof of notice is necessary; and also, circumstantial evidence of adequate *585 probative value may establish that the floor condition, traceable to third parties, was one of which the proprietor either had actual notice or the condition existed for such a length of time that, in the exercise of reasonable care, he should have known of it. Williamson v. F.W. Woolworth Co., 237 Miss. 141, 112 So.2d 529 (1959); Patterson v. Sayers, 223 Miss. 444, 78 So.2d 467 (1955); Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So.2d 582 (1949); Maxie v. Laurel General Hospital, 130 Miss. 246, 93 So. 817 (1922); Seymour v. Gulf Coast Buick, Inc., 152 So.2d 706 (Miss. 1963). Prosser states it in this way: "Negligence, like any other fact, may be proved by circumstantial evidence. This is evidence of a fact, or a set of facts, from which the existence of another fact may reasonably be inferred. It involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference, by which a conclusion is drawn." Prosser, at p. 200. (Hn 6) Verdicts may rest upon reasonable probabilities. Tombigbee Elec. Power Assn. v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953); Grizboski v. Bernheimer Leader Stores, 156 Md. 146, 143 A. 706 (1928).
(Hn 7) Since the jury found for plaintiff, we must consider the evidence and reasonable inferences from it in the light most favorable to plaintiff. The accident happened around nine o'clock in the morning. There are six cashier or check-out stands immediately inside the front door. Five rows of shelves, called gondolas, were lined up in an east-west direction at right angles from the front door toward the back of the store, with aisles between them seven or more feet in width. At the rear of the store there was a wide aisle and a meat counter. The vermicelli, which caused the fall, was kept in cellophane-wrapped packages on the second shelf from the top in one section of the second aisle from the north side of the store.
*586 Mrs. Hughes was 84 years of age, but in excellent health for a person of her age. She walked several blocks to the store from her apartment, went in the front door, and made selections at the vegetable and other counters. She then went to look for rice, which was kept in the same gondola as the vermicelli. While she was looking for the rice, her foot slipped on some vermicelli dropped on the floor from a damaged package still situated on the shelf. She fell and broke her right leg near the hip joint. Glass testified that the package from which the vermicelli escaped was on the floor by Mrs. Hughes when she fell, but plaintiff's evidence, apparently accepted by the jury, contradicted his statement. Mrs. Hughes and Claude Lee, an employee of Winn-Dixie at the time, both testified that the damaged package was still on its shelf, with about one-fourth of the vermicelli on the floor near where she fell and in the aisle toward a check-out counter.
After an ambulance removed Mrs. Hughes to the hospital, Glass, the store manager, put the damaged package in with other merchandise to be returned to the manufacturer. So it was not available for examination at the trial. Lee said that the package in which the vermicelli was packed looked as if "it either had been cut by a case opener or gouged by a long finger nail." His "judgment" was "that it was cut." Describing the method of unpacking shipments and stacking the merchandise for display, Lee said that an employee in the back room of the store opened the boxes such as those containing vermicelli, with sharp "case cutters, by sitting the box up, and cutting around the top of it."
Glass, the store manager, was in this particular aisle 3 to 5 minutes before Mrs. Hughes fell, checking the stock for needed replacements, and writing them in a book. He said no foreign objects were on the floor when he was there and he did not see any damaged package *587 of vermicelli or anything else on the shelves at that time. He admitted that, when he went to help Mrs. Hughes, there was vermicelli up and down the aisle almost over to the check-out stand. Mrs. Hoffer, a cashier in the store, said that several young colored children came into the store with a woman, ran around in it for several minutes, and left about five minutes before she heard of Mrs. Hughes' fall. When leaving, the children had in their hands loose "spaghetti", and they were not charged for it. It did not occur to her to report this incident immediately to the manager, or to ascertain whether there was any on the floor. Yet Glass admitted that, when he went to assist Mrs. Hughes, the vermicelli was on the floor under her and dribbling almost up to the check-out stand. The store had a rule requiring all employees to be alert for things on the floor and, when found, to remove them.
(Hn 8) Under this evidence, and reasonable inferences from it, the trial court properly submitted to the jury the issue of liability on two theories: (1) The floor condition was one which was traceable to the proprietor's own act. From the evidence, the jury could infer that the damaged package of vermicelli was cut by the case-opening knife, when the original container was opened, and was placed on the shelf in that condition. It was on the shelf at the time Mrs. Hughes fell, with about one-fourth of its contents upon the floor on which she slipped. In short, the jury could reasonably infer from all of the circumstances, particularly in view of the definite testimony that the package appeared to be cut and was on the shelf, with some contents on the floor, that it was cut by an employee in the process of opening the original container, and was placed on the shelf in that condition.
(2) The other theory properly submitted to the jury was that of constructive notice. The jury had the right to conclude that the vermicelli was on the floor at the *588 time Glass was checking the stock in that aisle about five minutes before the fall, and he simply overlooked it, and the damaged package was either on the shelf or floor at that time; that in the exercise of reasonable diligence, Glass should have seen it, recognized the danger it presented, and should have removed it. The jury could infer from these circumstances, the damaged, cut package on the shelf, some vermicelli on the floor, and the undisputed fact that Mrs. Hughes slipped on it, that Glass was negligent in not observing these facts, that they existed when he was in the aisle, and that this negligence was a proximate cause of the plaintiff's injuries.
Moreover, on constructive notice, Mrs. Hoffer, the cashier, said that before she heard of the fall (which in reasonable probability was at about the time it occurred), the colored children walked past the check stand with loose "spaghetti" in their hands. Glass admitted that some of it was on the floor almost up to the checkout stand. The jury could have concluded that, in the exercise of reasonable care, and in accord with the requirement of the management for employees to give notice of foreign substances on the floor, Mrs. Hoffer was negligent in not investigating further the source of the "spaghetti" and determining whether any more of it was on the floor, and in not notifying other employees of these facts. The jury could have concluded that the colored children had picked up some vermicelli on the floor and gone out the front door before Glass went into that aisle. Considering all circumstances, along with conflicting testimony, the jury was not required to accept defendant's contention that the colored children damaged the package and were the sole proximate cause of this accident, and thus to absolve defendants from liability. The claims of appellants would have to be based on circumstantial evidence and inferences, and *589 these also were considerations for the jury, which declined to accept them.
(Hn 9) Considering the direct and circumstantial evidence together, the jury was warranted in finding liability on either theory. The evidence indicated they were reasonable probabilities. Since plaintiff's instructions submitted both theories available to her, the instructions granted her and complained of by defendant were correctly given by the circuit court. The two instructions refused defendants were properly denied, since they erroneously excluded from the jury's consideration one of plaintiff's two theories, namely, that the floor condition was one which was traceable to the proprietor's own act. Defendants were granted ample instructions submitting fully their defenses to the jury. (Hn 10) Appellants also complain about the refusal of the trial court to sustain their challenge for cause of a juror, whom they subsequently challenged peremptorily, and who did not serve on the case. They do not show how the use of this peremptory challenge against this particular juror prejudiced their cause. See Ferriday v. Selser, 4 Howard (5 Miss.) 506, 518 (1840). There were no other errors in the trial warranting consideration by this Court.
(Hn 11) Nor can we say that the damages were grossly excessive or evidenced bias, passion and prejudice. At the time of the accident, Mrs. Hughes was 84 years of age, and in good health. At the time of the trial she had incurred actual medical expenses of almost $10,000. Since the condition of her fractured leg made it impossible for her to care for herself, she had to employ "sitters" or practical nurses around the clock, at $15 each 24 hours. She received a permanent injury, and will probably never be able to walk again without the aid of a walker. A six-inch nail was driven into the fractured bone by a surgeon, the bone had shortened, and the nail progressed through the head of the bone *590 into the joint. This protrusion caused her constant pain, even when moving her leg in bed. She has experienced considerable pain and suffering since the fall. Her regular physician testified that, because of the forced inactivity resulting from the fall, there had been an acceleration of arteriosclerosis and high blood pressure, thus affecting to some extent her mental status. The jury could conclude that Mrs. Hughes may probably have several more years of life expectancy. In view of all circumstances, the large medical expenses, the continuing medical expenses and cost of practical nurses, and the considerable amount of pain and suffering which she will have probably for the balance of her life, we can not say that the damages awarded ($40,000) are grossly excessive.
Affirmed.
McGehee, C.J., and Kyle, Gillespie and Brady, JJ., concur.