## Walters *v.* Gilbert

No. 42777 December 2, 1963 158 So. 2d 43

*Pack & Ratcliff, Warner Beard, Jr.,* Laurel, for appellant.

*Quitman Ross,* Laurel, for appellee.

Tom P. Brady, J.

This is an appeal from a final judgment of the Circuit Court of the Second Judicial District of Jones County, Mississippi. Said judgment was for the plaintiff, Richard Gilbert, appellee here, against the appellant, Ronnie C. Walters, defendant below, in the sum of $5,000. A motion for a new trial was filed, and order was entered overruling said motion.

The motion for a new trial contained six grounds: (1) The verdict of the jury is so grossly excessive that it evinces bias, prejudice and passion against the defendant; (2) the amount of the jury's verdict is contrary to the law and the evidence; (3) the court erred in not sustaining defendant's motion for a directed verdict at the conclusion of the plaintiff's case in chief; (4) the court erred in not sustaining defendant's motion for a directed verdict at the conclusion of all of the evidence and after plaintiff and defendant had rested; (5) the court erred in refusing the instructions requested by the defendant and refused by the court, and (6) the amount of the jury verdict is contrary to reason and is wholly unsupported by any competent evidence.

The assignments of error now urged by appellant are as follows: (1) The court erred in failing to sustain the defendant's motion for a directed verdict at the close of all the testimony in the case, and in failing to grant the requested peremptory instruction for the defendant as to liability; errors (2), (3) and (4) in the assignment relate to instructions Numbers 3, 4 and 5 granted to the plaintiff; (5) that the verdict of the jury was so excessive as to evidence bias, prejudice and passion; (6) the verdict is contrary to law and the overwhelming weight of the evidence, and the court, therefore, erred in rendering judgment for the plaintiff; (7) the court erred in failing to sustain defendant's motion for a new trial.

It is to be noted that the second, third and fourth errors assigned by appellant relate to instructions which were granted the appellee and which were not complained of or called to the attention of the lower court in the appellant's motion for a new trial.

Plaintiff below, appellee here, filed his declaration in the aforesaid county, alleging that on or about July 19, 1961, at about five or five-thirty P.M., while he was endeavoring to cross an intersection at Ferrell Street and 13th Avenue and Beacon Street, in the City of Laurel, Mississippi, he was struck and injured by an automobile which was being driven by appellant, Ronnie C. Walters. The negligence alleged in the declaration by the appellee was that the appellant negligently and carelessly failed to keep a proper lookout and negligently and carelessly failed to have his motor vehicle under proper control. Because of the negligence, he was struck and thrown to the paved surface of the street, his left foot was crushed, and he was otherwise bruised and injured, all brought about by the impact of said motor vehicle driven by the appellant.

The appellant answered the declaration, stating that appellee had not reached the center of the street, namely, Beacon Street; he denies that he failed to keep a proper lookout or that he negligently and carelessly operated his motor vehicle, or that said motor vehicle was not under proper control. Appellant stated as affirmative defense below that the appellee stepped suddenly out from behind an automobile into the path of appellant's automobile at a point where there was no crosswalk for pedestrians; that he brought his motor vehicle to a stop, and because of the negligence of appellee in failing to keep a proper lookout for motor vehicles and stepping suddenly from behind another automobile into the path of appellant's motor vehicle and attempting to walk diagonally across Beacon Street to his home on Ferrell Street where there was no cross-

walk, it was impossible for appellant, notwithstanding due care, to bring his motor vehicle to a full stop before coming in contact with plaintiff; that appellee's negligence not only contributed to but was the proximate cause of his injuries.

In reply to an order to particularize certain allegations in his declaration, appellee affirmatively stated that he was not gainfully employed during the twenty-four month period immediately preceding July 19, 1961, the date of the accident, and that appellee has not paid any medical expenses, doctor's bills, or hospital bills.

The appellant sought and received thirteen instructions which fully covered the law under the facts as were testified to in this cause, among which was the comparative negligence instruction placing in issue the question of the negligence of appellee, and the proportion thereof. The peremptory instruction, Number 14, asked for by appellant was refused.

The appellee asked for and received five instructions, three of which are complained of by appellant and which will be considered hereafter. The jury returned a verdict for appellee in the sum of $5,000. After the appeal was perfected, appellee died and the action was revived in the name of his widow and administratrix, Mrs. Virgie Viola Gilbert.

The appellee in this cause was a man 73 years of age; he was a diabetic; he had heretofore sustained an injury to the left foot which was injured when he was struck by the car driven by appellant. Appellee was treated by Dr. Edwin Cole, Superintendent of the South Mississippi Charity Hospital in Laurel, Mississippi. Prior to this time Dr. Cole had never treated appellee for any injury to or disease of his left foot. The X-ray taken, however, revealed that he had sustained a former injury and many bones had been broken in his left foot; but only a small burn, bruise, or contusion was seen on the left foot when he was treated by the doctor. The

foot was immobilized by an elastic bandage which was wound thereon, but this was removed by appellee because of pain caused by the swelling of the left foot subsequent to the injury and the bandaging. The doctor saw him on two other occasions and treated his foot. The record discloses there was a great deal of pain and suffering, swelling, and attending discomforts, which were caused to some extent by the diabetic condition of appellee. The doctor stated that if a normal person's foot had been so injured it would have healed in three or four weeks, but because of the diabetic condition and age of appellee, the appellee's foot did not heal and the pain was severe and continuous. There was a spur in appellee's foot below the heel, the result of a former injury, which also caused pain. The diabetic condition and the injury which he received tended to accentuate this pain. Part of this pain was precipitated by the abrasion on his foot which he had sustained some three months before. The pain increased during this time. The doctor refused to say that he would have had the pain even though he had not been injured. The record is silent insofar as his hospital bills, X-rays, doctor's bills, medical expenses being paid are concerned. It is also silent as to what salary or wages or sums of money the appellee had earned immediately preceding, or for the twenty-four months prior to, the accident. The record shows that he and his wife resided in a housing project, and that formerly he had done carpenter work and odd jobs.

On the date on which this accident occurred, appellee and his wife were returning from the Jitney Jungle where they had gone to purchase groceries. Appellee was carrying some groceries under his left arm and in his right hand he had a small walking cane that he was using in walking back to his home. The record shows that he used the cane at times and at other times he did not in order to be able to walk and to balance

or steady himself when walking. The record is not exact as to how far the appellee was from the curb of Beacon Street when he was struck and injured. Moreover, the appellant's testimony is confusing as to actually how far the appellant said appellee was when he was struck on Beacon Street. The record fails to show that he stepped out suddenly from behind a parked automobile, as pled by appellant.

Placed on the stand as the first witness and as an adverse witness, appellant Ronnie C. Walters testified that when he first saw appellee, Gilbert, he was only a few feet from the curb; that he had stepped from the curb on Beacon Street; that he was about one step, approximately three feet; that after he first saw appellee, the appellee took three or four steps. His testimony is as follows:

"Q. How far did you skid?

"A. It wasn't far — not — he had taken maybe three more steps, or four more steps — just the time it took me to hit my brakes, you know, and realize he was going to come out in front of me.

"Q. He had taken three or four more steps after you hit your brakes?

"A. Yes, sir.

"Q. And bearing in mind that he had walked three or four steps after you hit your brakes, how far would you say that your car skidded before it struck him?

"A. How far did it skid?

"Q. Yes.

"A. It didn't skid over a couple of feet.

"Q. Two feet?

"A. Not two feet, a few yards.

"Q. Two yards?

"A. A few yards.

"Q. A few yards?

"A. Yes, sir, I couldn't say for sure.

Under cross-examination and in an effort to explain the distance which the appellee had walked from the curb into the street, and the distance which appellant's car traveled or skidded, the appellant changes his testimony somewhat and says in response to the questions asked by attorney for appellee:

"Q. All right, it proves difficult, Mr. Walters, but let's go back, did I understand you correctly, and do I quote you correctly, when I say that you saw him when he was about one step away from the curb?

"A. Yes, sir, he was a couple of steps, he was a few feet from the curb, as I said before.

"Q. Well, I thought I understood you to say one step, but we will say, was it two steps now that he was away from the curb — about that far — would it be about six feet?

"A. He wasn't that far from the curb, no, sir.

"Q. Well, was he three feet when you first saw him?

"A. I would say so, about three feet.

"Q. About three feet, and how far were you from him then?

"A. I was approximately 20 feet or so.

"Q. 20 feet, and you immediately hit your brakes?

"A. Yes, sir.

"Q. And you hit them hard, didn't you?

"A. Hit them as hard as I could, yes, sir.

"Q. And it locked your wheels, did it?

"A. Yes, sir.

"Q. And you skidded that distance into him, didn't you?

"A. I skidded into him, yes, sir.

"Q. And during that time he had kept on walking and you say he took how many steps, in your best judgment?

"A. I don't know any way to judge it, to tell the truth. I just know how far he was out in the street when it - - -

"Q. Well, how far was he out from the curb when it happened?

"A. I would say approximately about as far from where - - - -

"Q. How far?

"A. I would say about ten feet from the curb when it happened.

"Q. He was ten feet from the curb, so you — he walked seven feet while you skidded twenty, is that correct?

"A. I couldn't say for sure.

The appellee's testimony as to his position in Beacon Street at the time he was struck, and the position or the approach of the car of appellant is concerned, can be found in the questions and answers as follows:

"Q. How fast were you walking? I mean were you walking unusually fast, unusually slow, or what?

"A. I was walking pretty fast to get across the street before a car come along.

"Q. How did you know there weren't any cars there when you started to cross the street?

"A. I looked everywhere and I couldn't see non — he whipped in from Ferrell Street on Beacon.

"Q. From Ferrell Street

"A. From Ferrell Street in on Beacon.

"Q. How far was he from Ferrell Street when he hit you?

"A. I was about middle ways of the street.

"Q. What I am getting at is, how far was Mr. Walters from Ferrell Street when he hit you, in your best judgment?

"A. He weren't so very far from Ferrell Street in Beacon."

Appellee testified that he knew there were yellow lines marking the path for pedestrians to use from the east side of Beacon Street over to the west side; that he did not use those lines but walked south of them

across Beacon Street directly toward the intersection of Ferrell Street, where his home is located on the corner; that he did not see any car until the appellant's whipped into Beacon Street; that when appellee was in the middle of the road when "he run over me." Appellee used the expression "when he run over me" twice or more and the appellee's wife used the same. expression. Appellant did not interpose any objection to this statement or question the accuracy thereof.

The question of negligence posed by the declaration of appellee and by the answer of appellant is simply, did the appellant fail to keep a proper lookout and did appellant negligently and carelessly fail to have his motor vehicle under proper control, and did these failures cause the appellant to drive his motor vehicle into and against appellee causing the injuries complained of? This is a question of fact, and was properly submitted to the jury by instructions from both sides. The jury resolved this question of fact against the appellant.

 █ In considering the first assignment urged by appellant, which is that the lower court failed to sustain the defendant's motion for a directed verdict at the close of all the testimony in the case, and in failing to grant the requested peremptory instruction for the defendant as to liability, this Court is of the opinion that the testimony of the appellee and appellant, when construed together, created issues of fact for determination by the jury. In fact, the testimony of the appellant alone as an adverse witness is possibly sufficient to permit the jury to find that appellant was negligent in keeping a lookout, or was negligent in the operation of his car subsequent to the time he saw the appellant in a place of danger. It is not contested by appellee that he is not guilty of contributory negligence, and appellant's instruction Number One so advises the jury, to-wit: That if they believe the appellee was guilty of negligence, then the damages for the plaintiff-appellee

must be reduced in proportion to the amount of negligence attributable to the appellee.

Furthermore, where the appellant's car was with reference to where the appellee was when appellant first saw him, whether or not the appellant had his car under such control and was operating it in such a manner so as to avoid striking the appellee when he saw the appellee was in a position of peril or danger, whether or not the appellee's failure to walk in the yellow marks for the safety of pedestrians, and whether or not the negligence of the appellee alone was the proximate cause of the injury, were all properly presented to the jury by the instructions. The jury resolved all these questions in favor of appellee and against the appellant. We feel, therefore, that the court below properly refused the directed verdict requested by appellant or to grant a peremptory instruction for the defendant as to liability.

In the case of Williams v. Moses, 234 Miss. 453, 106 So. 2d 45, among other things, there are outlined the duties of a motorist with reference to keeping a proper lookout ahead and to anticipating the presence of another person or vehicle upon the highway, and in operating the motor vehicle to avoid injuring such persons when they come, or by the exercise of ordinary care would come within his vision or under his observation. Under the rule announced therein and under the testimony in the case at bar, the negligence of both parties was for determination of the jury. Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; Hadad v. Lockeby, 176 Miss. 660, 169 So. 691; Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461; McDonald v. Moore, 159 Miss. 326, 131 So. 824; Graves v. Johnson, 179 Miss. 465, 176 So. 256; McMinn v. Lilly, 215 Miss. 193, 60 So. 2d 603; Gordon v. Carr, 226 Miss. 836, 85 So. 2d 490; 5 Am. Jur., Automobiles, Sec. 166, p. 598.

 Next considering the granting of appellee's instructions given and numbered three, four and five, which are urged by appellant as the second, third and fourth errors committed by the court below, we hold that appellee's instruction number three correctly states the controlling rule of law under the facts as developed in this cause. Appellant urges that since the instruction states in part, ". . . . he drove his vehicle into, against and over the plaintiff, Mr. Gilbert. . . .", and since the record is clear and uncontradicted to show that Mr. Gilbert was not run over, that the use of the words "run over" is calculated to leave with the jury the impression that they might find Mr. Gilbert was more seriously injured and his foot subjected to greater pressure than in fact was the case. If the appellee had not additionally qualified the instruction, which relates to liability rather than to damages, perhaps it could have misled the jury. However, the instruction did not treat solely the running of the automobile "over the plaintiff" — but also includes these alternate contingencies: "He drove his vehicle into, against, or over the plaintiff, Mr. Gilbert."

Although the appellee positively testified twice that the appellant ran over him, nevertheless the record clearly reveals that the appellee was speaking figuratively rather than literally. The appellant interposed no objection to this testimony which was presented to the jury. We cannot agree that the words "run over" as used here imply a greater speed than that which the appellant's car was traveling at the time it struck the appellee and that the jury was misled to the prejudice of appellant, since it was read and construed with the instructions granted the appellant which fully covered only the striking of appellee.

 Instruction Number Four which is urged as the third error committed is as follows: "The court instructs the jury for the plaintiff that the law presumes that all motorists see everything in front of

them and within the range of their vision.'' Appellant urges vehemently that this instruction is misleading, completely erroneous, grossly unfair, and amounts in fact to a peremptory instruction that appellant was guilty of negligence and the jury should find for the plaintiff.

This instruction comes closer to being an abstract statement of the law, which we have repeatedly criticized, than it does to being a peremptory instruction for the appellee as to liability on the part of appellant, but the facts as testified to by appellee and the appellant herein justify the granting of this rule of law. Furthermore, we cannot agree that it embodies or implies the only inference that the jury could draw, or understanding it could have, was that the court was instructing it that appellant was required by law to anticipate that appellee would put himself in a position of peril, and to avoid hitting him, if he did so, regardless of the circumstances. Appellant's inferences read into this instruction irreconcilable conflicts with the other instructions which do not exist, and, therefore, we must reject them. Williams v. Moses, supra; Hadad v. Lockeby, supra; Ulmer v. Pistole, supra.

■■ Instruction Number Five is as follows: ''The court instructs the jury for the plaintiff that if your verdict be for the plaintiff you may, in fixing the amount thereof, take into consideration all pain and suffering, which you believe from a preponderance of the evidence the said plaintiff has suffered as a proximate result of said injury and in addition thereto all loss of earning capacity, if any, sustained by said plaintiff as a result of his said injury, and further you may take into consideration all pain and suffering, which you believe from the evidence plaintiff will suffer in the future proximately resulting from his said injury, as well as all loss of future earning capacity sustained by the plaintiff;

. "The court says to you further that the exact amount of such damages cannot be proven by evidence, but is largely in your discretion, and in fixing the amount thereof, you should be governed by the application of a sense of justice and right to the facts in this case. In computing the damages, you should take into consideration all facts and circumstances as testified to by the witnesses in the case, and fix the amount at such sum as you believe from a preponderance of the evidence in this case the plaintiff is entitled to receive."

This instruction is objected to by appellant on the ground that the record contains no evidence whatever of any loss of earning capacity and the instruction suggests to the jury that it could find *twice* for the plaintiff on loss of earning capacity, and was highly prejudicial to appellant.

The instruction states in part: "All loss of earning capacity, if any . . . . . as well as all loss of future earning capacity sustained by the plaintiff. . ." Appellant complains that there was no proof of loss of earning capacity in the record; that appellee himself testified he had not been gainfully employed during the twenty-four month period immediately preceding his accident; and that there is no showing that the plaintiff had any earning capacity at all. Appellant further contends that the instruction led the jury to think or reasonably infer that the court was saying to it that the plaintiff could recover *twice* for loss of earning capacity, despite the fact that there was no proof of loss of earning capacity in the record whatever.

Appellant seems to confuse earning capacity with actual monetary benefits earned. It is not essential that wages, income tax returns, or deposit slips be shown to establish earning capacity, though such evidence would be strong and conclusive of the actual earning capacity. But any person who is not a hopeless cripple or permanently helpless has some earning capacity. He could

be a night watchman, parking lot attendant, baby sitter, or hold some similar job.

Appellee testified that two years before this injury he had done carpenter work, that "I been working, going along ever since I been in Laurel, first one little place and another, carpenting work, until I got run over, and then when I got run over, I ain't done a single thing."

In Miss. Central R. Co. v. Smith, 176 Miss. 306, 168 So. 604, this Court held that evidence of the plaintiff's earning capacity as a trained nurse was admissible even though she had been supported by her husband. In the case at bar, though appellee's earning capacity was insufficient to require the filing of an income tax return and though he failed to prove any payment of wages paid to him, this does not preclude the jury from determining what, if any, his earning capacity, little as it may be, actually was.

We hold that the instruction when considered carefully and in its entirety does not permit the jury to reasonably infer that the court was instructing the jury that appellee could recover twice for the loss of earning capacity. Appellant is correct when he urges that there are not two types of loss of earning capacity, but the instruction as written does not reasonably permit the inference that two types of loss of earning capacity are authorized thereby.

Alleged inferences should be strictly construed and to merit the reversal of a case must be reasonably deducible and clearly misleading. We do not construe, nor do we believe, this instruction can reasonably be interpreted by the jury to allow the inference that two types of earning capacity are implied, or that the appellee could recover twice for loss of earning capacity. It states that the appellee can recover for *all* loss of earning capacity, if any, sustained by the appellee as a result of his said injury. All loss of earning includes,

necessarily, past loss, present loss and future loss. The elimination of any of these segments of time prevents a recovery for all loss of earning capacity. It is obvious that at the time the suit was tried the loss of earning capacity since the accident and loss of capacity at the time of trial were fused together, but this does not constitute all loss of earning capacity because the future must still be considered. This is not unlike the well established rule of damages relating to all pain and suffering which has been suffered, or which is believed will be experienced in the future proximately resulting from an injury. Two recoveries are not thus allowed.

 █ Does all loss of earning capacity have to be total or permanent? We hold it does not. Loss of earning capacity can be partial and temporary, or partial and permanent, or total and temporary, or total and permanent. It depends upon the nature and extent of the physical impairment as is well recognized in all compensation acts. It is the unbroken continuity of physical impairment into the future which makes it permanent. The extent of the physical impairment, together with the duration thereof, determines the amount of loss of earning capacity.

We feel that the instruction could have been more clearly drawn, but as it is written we do not feel that the jury could reasonably infer that the court was instructing it that appellee could recover twice for the loss of earning capacity, or that two types of earning capacity are authorized thereby. ''All loss of earning capacity, if any,'' is the ultimate which the jury could have possibly considered, and afortiori includes the continuation of that loss into the future. Therefore, we hold that the jury was not misled to the prejudice of the appellant by the giving of this instruction. In passing, the instructions granted appellant covered every aspect of negligence on the part of the appellee and

asserted every defense and justification which the appellant could properly present.

The fifth, sixth and seventh errors assigned are that the verdict was so excessive as to evince bias, prejudice and passion on the part of the jury, and the verdict of the jury is contrary to the overwhelming weight of the evidence, and the court erred in rendering judgment for the plaintiff, and the defendant's motion for a new trial should have been sustained. These errors, therefore, pertain to factual evaluation primarily.

The testimony of the appellee, his wife, and the doctor, is sufficient to permit the jury to determine, without bias, prejudice and passion, that the pain and suffering sustained and endured by appellee was properly compensated for in the amount of the verdict which was rendered. We feel this is correct, even though the jury may have allotted little or nothing because of loss of earning capacity of the appellee. ██ ■ We recognize that which everyone knows, namely, that the purchasing power of the dollar today is between forty and forty-five percent of its face value and a verdict of five thousand dollars is actually worth less than twenty-five hundred dollars in buying power because of present inflation. ██ ■ Therefore, the verdict is not excessive.

In conclusion, the record fails to show that the verdict is contrary to the overwhelming weight of the evidence, and the lower court did not commit error in rendering judgment for the appellee or in refusing to grant the appellant a new trial. All the instructions when considered together constitute an applicable statement of the rules of law involved. We have carefully considered the record and the briefs of counsel filed here. Counsel for appellant has ably urged every proper and possible ground for reversing the verdict and judgment entered herein. We hold that the appellant received a fair, impartial trial and that there are no prejudicial errors committed in the trial below for which this cause should

be reversed or remanded. Williams v. Moses, supra; Ulmer v. Pistole, supra; Hadad v. Lockeby, supra; Mc-Minn v. Lilly, supra; Gordon v. Carr, supra; Chapman v. Powers, 150 Miss. 687, 116 So. 609. The judgment for the appellee is therefore affirmed.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Rodgers, JJ., concur.*