191 So.2d 856 (1966)
GULF HILLS DUDE RANCH, INC.
v.
Eugene A. BRINSON.
No. 44099.
Supreme Court of Mississippi.
November 14, 1966.
*857 Rae Bryant, Thomas L. Stennis, II, Gulfport, for appellant.
Walter L. Nixon, Jr., Biloxi, Cumbest, Cumbest, O'Barr & Shaddock, Pascagoula, for appellee.
BRADY, Justice.
This is an appeal by the Gulf Hills Dude Ranch, Inc., defendant below, from a judgment of the Circuit Court of Jackson County, Mississippi, in favor of appellee, in the amount of $32,500. The facts necessary for the disposition of this case are as follows:
On December 22, 1962, the United Insurance Company of America, hereinafter called United, the employer of appellee, elected to have its Christmas party at the Gulf Hills Dude Ranch, Inc., hereinafter called Gulf Hills, in Ocean Springs, Jackson County, Mississippi. The appellee was one of the representatives chosen to make *858 the necessary contacts with the officials of Gulf Hills for a place in which to have the party.
The appellee arrived at Gulf Hills on the night in question at approximately 7:15 p.m., and dinner was served at 8:45. Appellee drank three highballs during the course of the evening prior to the time he sustained the hereinafter mentioned injuries.
Mr. Horace W. Wheat, Assistant Manager for United, and Mr. Wheat's wife, together with the appellee, walked to one of the windows of the Fiesta Room to view the pool below. The appellee and Mr. Wheat were returning to their table when "all at once Mr. Brinson's foot shot out from under him, and to the floor he went." The record discloses that Mr. Brinson's foot slipped, causing him to fall on his right leg which was twisted under him.
Appellee experienced great pain. He was taken to the New Biloxi Hospital where an examination and x-rays disclosed that his leg was badly swollen between the knee and ankle. A complete fracture, classified as a spiral type, was found of the tibia, and there also was a free lying fragment of bone in the middle which was designated as a butterfly fragment. The examination also revealed a fracture of the fibula or the secondary bone of the lower right leg which had been broken in its upper extent near the proximal head. The appellee was confined in the hospital for a period of eighteen days.
The record shows that the Fiesta Room in which the fall occurred had a red tile floor. Appellee testified that Mr. Richardson, the catering manager, advised him that the wax had been removed from that portion of the floor which was to be used for dancing. Appellee nevertheless stated that the floor upon which he slipped and fell was extremely slick and appeared to be highly waxed.
Appellant contends that the circuit court erred in its refusal to set aside the verdict and the judgment entered thereon and to enter judgment in favor of appellant, and in its refusal to grant appellant a new trial. We will discuss those errors assigned which merit consideration, the first of which is that the lower court erred in not granting a directed verdict for the appellant and in refusing to grant appellant's request for a peremptory instruction.
The basis of appellant's first assignment of error is that the appellee knew the floor to be slick and dangerous and yet, knowing this fact and having imbibed alcoholic beverages, appellee put himself in a position where he was not physically or mentally capable of safely taking care of himself. Appellant contends that the appellee therefore assumed the risks of any injury which might befall him. The fallacy in this argument is that there is no proof in the record upon which it can be safely concluded that the appellee was under the influence of intoxicating liquor. Several witnesses for the appellee testified that he was not under the influence of intoxicating liquor. The sole witness who testified with reference to appellee's inability to walk and carry himself in a sober manner was the Negro waiter, Bennie Blakeney, who made conflicting statements after being interrogated at some length.
The record fails to establish that appellee, prior to his fall, appreciated the danger of the slippery condition of the floor to a degree that it can be fairly said that for him to walk upon the floor in its condition constituted an assumption of the risks incident thereto. Nor is there merit in appellant's contention that the proof failed to show that it knew, or by the exercise of reasonable care should have known, of the slippery condition of the floor, since the appellant's own agents or employees were responsible for such condition. This is not a case where there was debris, water or other foreign substance on the floor of which the appellant had knowledge. Appellant had certain knowledge, or by the exercise of reasonable care should have had certain knowledge, of the condition of the *859 floor prior to the time the guests arrived. Subsequent to their arrival, appellant had reasonable time in which to ascertain that portions of the floor were in a highly slippery and unsafe condition. In this connection appellant finally urges that the verdict of the jury is against the overwhelming weight of the testimony and contrary to the law and evidence. With this contention we cannot agree.
As to the condition of the floor in appellant's Fiesta Room, we find this pertinent testimony. Mrs. Shirley Russell, a housewife and guest at the party, stated that when she walked into the Fiesta Room with her husband at approximately 8:30 on the night in question, her foot went out from under her and she almost fell. She testified that the floor was shiny and appeared to be highly waxed. Mrs. Russell's testimony was verified by her husband, Gerod Algene Russell. Mrs. Dorothy Scarborough, another guest at the party, also testified concerning the slippery condition of the floor.
Mr. Horatio W. Wheat, Assistant Manager for United, testified that he talked to appellee a number of times at the party, and that appellee walked normally, talked intelligently and in no way indicated that he was under the influence of alcohol. Mr. Wheat testified that while he and appellee were returning from looking at the swimming pool, one of appellee's feet shot out from under him and he fell to the floor. Wheat stated that when he stooped over and tried to help appellee to his feet, he noticed that the floor was very slippery because he almost fell himself.
Mr. Grover E. Harrison, District Manager for United, testified that he had seen appellee during the night and talked with him and that nothing in appellee's actions and speech indicated that he was under the influence of alcohol. Mr. Harrison testified that when he bent over to assist appellee in getting up, he slipped himself because of the slippery condition of the floor. Mr. Harrison stated that at the time of the injury appellee's salary and earnings were $200 or better per week, and that in addition to losing his earnings and wages, he also suffered a loss in the pension fund of the company; that the company contributed ten percent of the gross earnings of the employee to this pension fund and that appellee lost this ten percent during the time he was off from work or when he was making less because of his injuries. The loss in the pension fund amounted to $1,131.
Mrs. Brinson, appellee's wife, testified as to the intense pain and suffering which her husband had experienced as a result of the fall.
Mr. Richardson, the Assistant Manager of Dude Ranch, testified that it was his duty to see that the floors were in a reasonably safe condition for his customers' use. He admitted that other people slipped on the night in question and that one fell in the same area in which appellee fell. He denied, however, that Mr. Harrison had complained to him about the slippery condition of the floor. He testified that he did not know whether the wax had been removed from the dance area on the day in question. He stated that nothing was used to clean the floor at any time except hot soapy water and that no preservatives were used.
The deposition of Eugene Richardson, appellant's catering manager, discloses that he was responsible for the wax on the floor of the Fiesta Room prior to December 22, but not on that date; that it was his duty to see that the waxing was done in a manner that would be safe for the use of business customers, and that if it were not done in such manner, it would constitute a violation of his duties. This witness would not testify as to whether other guests had slipped on the floor on the night in question, since he was not present. Richardson by deposition stated that he did not know the date on which the last wax was applied to the floor, but that no wax was applied on December 22.
*860 Three witnesses testified for appellant that the floor was not slippery. Testimony for appellant further showed that waiters had walked on the floor during the course of the evening in serving food and drinks and had experienced no difficulty in walking. When considered with the contraventions in the testimony offered by appellant, the testimony of appellee clearly made an issue of fact for determination by the jury.
From the foregoing it is apparent that the lower court did not err in refusing to grant a directed verdict for the appellant or in refusing appellant's request for a peremptory instruction. In determining whether or not a directed verdict is in order we have repeatedly held that the evidence must be treated as proving every fact favorable to plaintiff's case, whether such facts are established directly or by reasonable inference. Hawkins v. Hillman, 245 Miss. 385, 149 So.2d 17 (1963); Ladner v. Artigues, 234 Miss. 292, 106 So.2d 139 (1958); Grice v. Central Elec. Power Ass'n, 230 Miss. 437, 92 So.2d 837, 96 So.2d 909 (1957).
The testimony of appellee's witnesses clearly indicates, and the jury was authorized to find, that the floor of appellant's Fiesta Room was in a highly slippery condition and that because of this slippery condition, the appellee fell and was injured. The proof is wholly insufficient to establish the fact that appellee was under the influence of intoxicating liquor or that the drinks which he consumed contributed in any manner to his slipping and the attendant injuries occasioned thereby. These questions were issues of fact and were properly submitted to the jury for determination. Moore v. Winn-Dixie Stores, Inc., 252 Miss. 693, 173 So.2d 603 (1965); Patterson v. Sayers, 223 Miss. 444, 78 So.2d 467 (1955).
Just as it was not necessary in the Patterson case for Mrs. Patterson to show the exact nature of the susbtance which caused her to slip, so it is not necessary in the case at bar for the appellee to show the substance which was on the floor which caused him to slip. It is on these issues of fact, upon which the minds of reasonable men may differ, that the jury is called into play to determine what the true facts are. Mississippi Winn-Dixie Supermarkets, Inc. v. Hughes, 247 Miss. 575, 156 So.2d 734 (1963); Williamson v. F.W. Woolworth Co., 237 Miss. 141, 112 So.2d 529 (1959).
Since the appellee showed that the slippery condition of the floor was traceable to the proprietor's own act or the acts of his agents, it is unnecessary to show that specific notice of such condition was given to the appellant. However, in this instance the appellant had constructive notice that the floor was in a slippery condition, and, at any rate, these questions were properly presented to the jury for consideration and were resolved against the appellant.
In Mississippi Winn-Dixie Supermarkets, Inc. v. Hughes, supra, we pointed out that the jury could have found from the evidence, either direct or circumstantial, that the dangerous condition of the floor was traceable to the proprietor's own acts or that the dangerous condition was created by the acts of third parties of which the proprietor had constructive notice. In the case at bar there was no liquid or other foreign substance on the floor. The entire floor was slippery, particularly a small area where appellee slipped and was seriously injured, and negligence, like any other fact, can be proved by circumstantial evidence. In this instance, since the jury found for the appellee, we are required to consider this evidence, and all reasonable inferences from it, in a light most favorable to the appellee. We hold, therefore, that the appellee proved by both direct and circumstantial evidence that the floor of the Fiesta Room of the appellant was in a slippery condition. The proof of the appellant is insufficient to show what was actually put on the floor or how it was applied. The appellant *861 failed to call as a witness the person who was supposed to have been charged with the actual waxing of the floor. The proof is sufficient to justify the jury in finding that the appellant was negligent in failing to exercise reasonable care to keep the floor in a reasonably safe condition so as not to cause injury to the appellee. For these reasons the Circuit Court of Jackson County was correct in refusing to grant appellant a directed verdict and in refusing to grant appellant's peremptory instruction. Moore v. Winn-Dixie Stores, Inc., supra. For the same reasons we must hold that the verdict of the jury is not against the overwhelming weight of the evidence, nor is the verdict of the jury contrary to the law and the evidence but rather is supported by substantial evidence. Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961); Patterson v. Sayers, supra.
Appellant earnestly contends that the court erred in permitting witnesses to testify in this case that they had slipped on the same floor and in the same area on the night in question, prior to the time the appellee fell. We think that this issue was determined in Patterson v. Sayers, supra, and in Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447 (1935). In S.H. Kress & Company v. Markline, 117 Miss. 37, 77 So. 858 (1918), the court allowed testimony in regard to a previous condition where an elevator door had been left open and others had been hurt or almost hurt. We held in that case that this was permissible as tending to show the dangerous condition or character of the place there involved. The testimony of these witnesses, insofar as time is concerned, all deals with the period immediately before the time when the appellee fell. These witnesses were testifying about the exact spot or a spot in very close proximity to the spot where the plaintiff fell. Their testimony was relevant to show the dangerous condition or character of the place alleged by the appellee to have been slick and dangerous at the time in question.
The appellant next urges that because the court called and inquired of the jury, after they had deliberated approximately an hour, to determine whether or not they had reached a verdict, constitutes reversible error. It can be conceded that great circumspection must be exercised by a court when dealing with a jury which is deliberating its verdict. However, in order for such action by the court to constitute reversible error, the record must show that such action improperly influenced the jury so that their verdict was affected thereby. The record fails to disclose that this was true in this instance.
In the case of Vicksburg Bank v. Moss, 63 Miss. 74 (1885), which appellant cites and relies upon, and which presents a stronger case than the one at bar, we held that the inquiry of the court as to whether or not the jury had reached a verdict, and a statement by the court that if they had not agreed and did not agree by 9:00 p.m. they would have to remain in the jury room as the court would then adjourn until Monday, was not prejudicial error, because, if it had any effect at all on the jury, it must have operated as much in favor of the appellant as for the appellee.
In Matthews v. State, 243 Miss. 568, 139 So.2d 386 (1962), we pointed out that although the trial court had twice asked the jury whether it had completed its deliberation and the first request was made some forty minutes after the jury had retired and the second about thirty minutes later, and about thirty minutes subsequent thereto the jury brought in a verdict, these matters were within the sound discretion of the trial judge as to how long he should keep the jury deliberating, and unless it is shown that the judge abused his judicial discretion so as to prejudice the party, this Court would not reverse the trial court because of the length of time the jury is required to deliberate. Character v. State, 212 Miss. 30, 53 So.2d 41 (1951); Dossett v. State, 193 Miss. 593, 10 So.2d 376 (1942). The record in the present case is silent, and *862 we cannot find that the rights of the appellant in the case at bar have been prejudiced by this inquiry on the part of the court.
Appellant urges that the trial court erred in granting two instructions to the appellee. One instruction relates to the degree of care which must be exercised by the appellant in order to maintain the floor in a reasonably safe condition, and the other relates to the measure of damages to which the appellee is entitled. We have meticulously studied all the instructions granted the appellant and the appellee. While the instruction relating to the degree of care required and the slippery condition of the floor could have been worded more carefully, we cannot hold that it constitutes a reversible error and that the jury was not properly instructed with reference to these legal requirements. We fail to find the irreconcilable conflicts urged by the appellant but, to the contrary, feel that the instructions when read and construed together do present a fair and accurate statement of the governing rules of law. West Bros. of Pascagoula v. Dickens, 183 So.2d 480 (Miss. 1966); Walters v. Gilbert, 248 Miss. 77, 158 So.2d 43 (1963).
In the instruction relating to the measure of damages, we fail to find that there is a pyramiding of damages or an assessment of damages twice for the same item. There is no merit in appellant's contention that the instruction misled the jury, since a careful reading of the instruction discloses that it does not request or permit the jury to make but one award for each element of damages, all of which is left for determination by the jury. Gillis v. Sonnier (Miss. 1966), 187 So.2d 311. As in the Gillis case, while we do not applaud the form of this instruction and the verbiage used therein, still we cannot hold that a reasonable jury, considering the facts before it, would have been misled thereby into thinking that the court was advising the jury that they could return two sums for the same item of damages. We hold, therefore, that no prejudicial or harmful error was committed by the granting of these instructions. Koestler v. Burton, 207 Miss. 40, 41 So.2d 362 (1949); Quinn v. Tillman, 17 So.2d 326 (Miss. 1944); Newman Lbr. Co. v. Cameron, 179 Miss. 217, 174 So. 571 (1937); Moore v. Johnson, 148 Miss. 827, 114 So. 734 (1927).
Reading all the instructions together, we feel that the law was fairly announced to the jury, that the prerequisites of a fair trial have been met, and a proper verdict returned. Walker v. Poles, 248 Miss. 887, 162 So.2d 631 (1964); Union Producing Co. v. Pitmann, 245 Miss. 427, 146 So.2d 553 (1962); Howell v. George, 201 Miss. 783, 30 So.2d 603 (1947).
The last error assigned by the appellant is that the amount of the verdict in the case is so excessive as to evince bias, passion and prejudice on the part of the jury in favor of the appellee. Appellant urges also that the amount of the verdict is proof that the instructions granted the appellee were erroneous. Let us consider if there is merit in appellant's contention. The proof shows that the appellee was hospitalized and bedridden for a period of eighteen days in the New Biloxi Hospital. After the bones in his right leg had been set, a plastic cast was placed thereon which extended from his toes to the top of his thigh. This cast was one inch thick and heavy. It remained on appellee's leg for approximately two and a half months. Then a lighter, full-length cast was put on, which remained on appellee's leg for an additional two and a half months. When the second cast was removed, a third cast was applied which remained another two months. When the third cast was finally removed, seven months had lapsed since appellee had been injured, and he was still unable to walk without the use of crutches and could not put any weight at all on his leg without suffering severe pain. It was necessary for him to use crutches until the latter part of September 1963 when he became able to walk with the use of a cane until the first part of February 1964. Thus, approximately *863 thirteen months after he was injured, he was able to walk. He testified that at the time of the trial of this case his right ankle was still in pain. Proof shows that the tendons and muscles in appellee's leg atrophied from lack of use and that he has lost about ten percent of the dorsal flexion power of his right leg. This makes it difficult for him to stand or to go up and down steps, which his work requires him to do in his house to house visitation in solicitation of the sale of insurance policies and the collection of premiums. The proof shows that his right leg is three-eighths of an inch shorter than his left leg; that in lifting his right foot in his work, which requires that type motion, he will probably encounter pain and discomfort; that he will suffer from residual arthritis in the joints and bones above and below the fracture site and experience trouble in the future with his leg due to the damage in the blood supply around the fractured area. The doctors testified that appellee will suffer pain as he walks and uses his right leg and ankle because of the capsular involvement and that he will suffer for the balance of his life as a result of these injuries. The record shows that except for the fact that the appellee took exercises and went for extra therapeutic treatments beyond the time which his doctors required, his recovery would not have been as complete as it is. There is no evidence of hypochondria in the appellee.
The record discloses that as a direct result of appellee's injuries the actual loss of earnings at the time of trial was $11,213. In addition to this loss, he also lost the benefits of ten percent which would have gone into his pension fund, or an additional $1,131. The record clearly shows that his reasonable medical expenses for the requisite treatment up to the date of trial were $1,003.14. Thus the total out-of-pocket loss at the time of the trial was $13,447.14.
The record is clear that this appellee endured severe pain and suffering, not only at the time of injury, but during the entire time he was in a cast, and subsequently when he had to learn to walk again and had to bear his weight on his right leg. The doctor's testimony was that the appellee's injuries were disabling injuries which would deter him from doing the type work he had been engaged in prior to the accident. The medical testimony further shows that in the future appellee will have difficulty in doing any type work which requires the maximum elevation of his foot. It was further shown that he will probably suffer occasional pain and discomfort as a result of changing weather conditions. Insofar as excessiveness of the verdict is concerned, in the case of Brown & Root, Inc. v. Continental Southern Lines, 228 Miss. 15, 87 So.2d 257 (1956), we held that a verdict of $35,000 compensatory or actual damages awarded a 33-year-old bus driver who sustained a combined fracture of the ankle with ten percent permanent partial disability was not exorbitant, and we pointed out that the purchasing power of the dollar had substantially decreased in the past several years.
In Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959), we held that a $25,000 verdict awarded a 57-year-old woman for multiple abrasions, a bleeding wound over the left eye which required several stitches, a fractured rib, together with a whiplash to the neck, and eye pain, soreness and blurred vision, was not excessive.
In Mississippi Winn-Dixie Supermarkets, Inc. v. Hughes, supra, we upheld the $40,000 verdict and judgment for the plaintiff, who had medical expenses of approximately $10,000 and suffered permanent disability. In Greyhound Corp. v. Kindle, 240 Miss. 702, 128 So.2d 567 (1961), we affirmed a $40,000 award to a forty-nine year old woman who suffered injuries including a fracture of the left collarbone resulting in permanent partial disability and injuries to the left side of her body, with no loss of earnings or wages, and no large hospital bills
*864 We cannot say that the verdict in this case is so excessive as to evince bias, passion or prejudice on the part of the jury, but are constrained to conclude that the jury took into consideration the intense pain and suffering, mental anguish and the physical injuries, permanent and temporary, and the loss of earning capacity, which the appellee sustained on account of the injury. For these reasons we cannot hold that the verdict is excessive and is not supported by the law and evidence. Therefore, the amount of the verdict will not be disturbed. Ladner v. Merchants Bank and Trust Co., 251 Miss. 804, 171 So.2d 503 (1965); Whatley v. Delta Brokerage and Warehouse Co., 248 Miss. 416, 159 So.2d 634 (1964); Kincade and Lofton v. Stephens, 50 So.2d 587 (Miss. 1951).
As we have heretofore held, this Court will not disturb the jury verdict unless it is so excessive as to evince bias, passion or prejudice. Failing to find reversible error in this cause, we therefore affirm the judgment of the trial court. Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939).
Affirmed.
ETHRIDGE, C.J., and RODGERS, JONES and INZER, JJ., concur.