202 So.2d 922 (1967)
Mrs. Ira AULTMAN
v.
DELCHAMPS, INC., a Corporation.
No. 44506.
Supreme Court of Mississippi.
October 3, 1967.
Kervin & McIntosh, Collins, Zachary & Weldy, Hattiesburg, for appellant.
Gray & Montague, Hattiesburg, for appellee.
BRADY, Justice.
The appellant instituted suit in the Circuit Court of Forrest County, Mississippi, seeking recovery for injuries allegedly sustained by her while shopping in appellee's grocery store. The trial court granted a peremptory instruction for appellee, and it is from that order that this appeal is prosecuted. Tersely stated, the facts are as follows:
On September 18, 1964, the appellant, accompanied by her husband, went to the grocery store of the appellee, arriving there at approximately 9:30 A.M. With her husband she selected and placed in the grocery buggy the items which she purchased. Arriving at the check-out stand she discovered that she had neglected to obtain oleomargarine, which she alone returned to pick up.
The record fails to disclose the lay-out of appellee's business, but it shows that some twenty-odd feet from the cash register is the bread rack. When she arrived at this place a Negro man appeared to be engaged in stacking bread in the bread rack. She asked this man where she could find the oleomargarine. The record discloses that he volunteered to show her its location. He proceeded to walk to the spot where the olemargarine was, with her following him down the aisle which is between eight and ten feet in width. After she selected a small package of oleomargarine both retraced their steps. He walked on the right side of the aisle while she walked to the left. Her husband had waited for her at the cash register with the groceries and could see her only from the waist up. She stepped upon something and slipped. She testified that she did not fall to the floor, but that she went back and caught, thereby hurting her back; that she didn't look down on the floor, but went on to the buggy with the items. She testified that she told her husband that her back was hurt and that he *923 pushed the buggy to the checkout stand and they were checked out, at which time she complained to some employee of the store. She testified that they went back to the spot where she slipped and he picked up the object and threw it over at the end of the vegetable bin, after which the employee obtained her name and address and the name of her physician. She testified further that the object upon which she slipped, in her own words, "was about two inches and better wide and about from five to six inches long." When asked to describe the object, she testified that it "was dark and dirty looking, and looked like it might've been walked on * * *."
The record discloses that she went home and called Dr. Reeves that day, asking him to telephone her a prescription, which her daughter (Mrs. Guy) went to the drugstore to pick up. She testified that on the following day, the 19th, she went to the office of Dr. Reeves, who gave her some oral medication and prescribed diathermy treatments which she took for eight or ten days. When at home she was in bed with an electric heating pad. The record discloses that she saw Dr. Reeves seven times subsequent to his first examination of her, which was not on September 19 but on September 21, three days subsequent to the date she slipped; that she saw Dr. Reeves five times in September, the last time being on September 28; and that she saw Dr. Reeves also on October 1 and October 15. The doctor's bill for his services amounted to $52 and was made an exhibit to his testimony. The appellant testified that she is not able to do her housework and other chores about the farm as she could prior to the time she sustained the alleged injuries.
While six assignments of error are urged, nevertheless this cause turns on one sole question, namely: Did the appellant make out a case for determination by the jury as to whether or not the appellee had failed under the standard of care prescribed by law either on the theory that (1) an employee was responsible for the object upon which she allegedly slipped being in the aisle, or (2) the object had been allowed to remain in the aisle a sufficient length of time to charge appellee with actual or constructive knowledge of its presence and the dangerous condition created thereby and failure to remove this danger?
Turning to the issue of whether or not an employee of the appellee placed or permitted the object to remain in the aisle, we find that there is no proof in this record to justify a conclusion in the affirmative. The appellant, when asked by her counsel, "Was this colored boy an employee of Delchamps?" replied "Well, I think he was putting in bread there." This falls far short of establishing the fact that the Negro man was an employee of the appellee. The nearest to which the proof comes to showing that an employee of the appellee caused or permitted the object to be placed or to remain in the aisle is the fact, which appellant urges, that since the Negro man was engaged in stacking bread in the bread bin that per se the jury would be warranted in finding that the Negro man was an employee of the appellee, and the fact that the Negro man knew where appellee had located its oleomargarine also is proof that he was an employee. We do not believe that these presumptions are merited under the facts for the reason that it is common knowledge that the bread and other companies have employees who deliver to their customers bread and other products, and any person who shops in a store for any length of time knows where the objects are exhibited. Actually, appellant was not sure the Negro man was stacking bread. There is not a scintilla of proof that the Negro man was on the payroll of the appellee. We do not feel that it can be logically held that because he was stacking the bread or even because he was able to show the appellant where the oleomargarine was that it necessarily follows that he was an employee of the appellee. Furthermore, there is nothing in this record to indicate that there is any connection between the *924 Negro man and the dark object on the floor, or any connection between any employee and the dark object on the floor.
Finally, considering the contention of the appellant that the object had been allowed to remain on the aisle a sufficient length of time so as to charge the appellee with actual or constructive notice of its presence and dangerous condition, again we find no proof as to how long the object had been in the aisle. Appellant relies on the fact that the store opened at eight o'clock and that the object had been there from eight o'clock to approximately 9:30 when she stepped on it. Again the appellant is relying upon a presumption which is not substantiated by any testimony. It does not follow that because the store opened at eight o'clock that at precisely that time some person threw the dark object on the floor. It is just as logical to assume that the object was thrown there two or three minutes before she stepped on it, and such a presumption is not sufficient to sustain a recovery on the theory that the object had been placed there and remained there for a sufficient length of time so that the appellee by the exercise of reasonable care should have known of the dangerous condition and removed the object from the floor. Apparently appellant in her effort to create an issue of fact under the authorities presumed, first, that the Negro man who stacked the bread was an employee, and second, that since this employee twice passed where the object was in the aisle in taking the appellant to where the oleomargarine was and returning, he saw or should have seen the dangerous object and removed it.
Actually, the testimony of the appellant does not establish the fact that the Negro man could have seen the object in the aisle. In this regard the following testimony was offered:
"Q. Now as this colored boy walked up the aisle, was there anything to have prevented him from seeing this object?
"A. Well, I don't know; he was on the other side of the aisle."
The error committed by the appellant consists in basing a presumption upon a presumption, which this Court has condemned. Goodwin v. Misticos, 207 Miss. 361, 42 So.2d 397 (1949); Masonite Corp. v. Hill, 170 Miss. 158, 154 So. 295, 95 A.L.R. 157 (1934).
The cases in which recoveries have been allowed are clearly distinguishable on the facts from the case at bar. Comparable cases heretofore decided by this Court clearly show that the action of the astute circuit judge was correct in granting a peremptory instruction, and for this reason the cause is affirmed. Dees v. Campbell, 183 So.2d 624 (Miss. 1966); Sears Roebuck & Co. v. Tisdale, 185 So.2d 916 (Miss. 1966); Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447 (1935); Annot., 61 A.L.R.2d 6, 13 (1958).
Affirmed.
ETHRIDGE, C.J., and RODGERS, JONES and PATTERSON, JJ., concur.