WILLIE MAE HILL v. ALLIED SUPERMARKETS, INC.

No. 7826SC739

(Filed 31 July 1979)

1. **Negligence §§ 53, 53.4— duty of store proprietor to invitee—res ipsa inapplicable**

   A store proprietor owes to his customers the duty to exercise ordinary care to maintain in a reasonably safe condition those portions of his premises which he may expect they will use during business hours and to give warning of hidden perils or unsafe conditions of which he knows or of which in the exercise of reasonable inspection and supervision he should have knowledge. However, no inference of negligence on the part of the store proprietor arises from the mere fact of the customer's fall on the floor of his store during business hours, the doctrine of *res ipsa loquitur* not being applicable.

2. **Negligence § 57.7— fall on water on store floor—insufficient evidence of negligence**

　　Plaintiff's evidence was insufficient to be submitted to the jury on the issue of defendant store proprietor's negligence where it tended to show only that plaintiff fell because of water on the store floor near a vegetable bin but there was no evidence from which the jury could find either what was the source of the water in which plaintiff fell or how long the water had been there.

APPEAL by defendant from *Gavin, Judge.* Judgment dated 6 May 1978 filed in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 1 May 1979.

This is a civil action in which plaintiff seeks to recover damages for injuries suffered when she slipped and fell in defendant's supermarket. Plaintiff alleged that her fall was a result of the defendant's negligence in maintaining the floor of the aisle where plaintiff fell with water or some other slippery substance thereon and in failing to remedy the condition or to warn customers of it. Defendant filed answer denying negligence on its part and alleging that the plaintiff was contributorily negligent.

The parties stipulated that the supermarket was under the control of the defendant and that the plaintiff fell while she was a business invitee therein.

At trial the plaintiff presented evidence to show:

She is about 57 years old. On 31 August 1974, accompanied by her daughter and niece, she entered defendant's store to shop. They walked past the cash register, and turned left down an aisle on the far right between the meat counter on the right and a bin on the left containing frozen foods. Plaintiff was near the frozen food bin and had taken three or four steps down the aisle when she slipped and fell in a puddle of water approximately 1½ feet wide and 2½ to 3 feet long. The puddle was big enough to wet the back parts of the plaintiff's clothing when she fell. The floor was vinyl tile, light in color, "something like an off-white." The plaintiff was wearing low-heeled shoes. The day outside was fair and warm. There was no water fountain where plaintiff fell.

Concerning the puddle and its source plaintiff testified on direct examination:

I didn't have occasion to observe how close I was to the vegetable bin while I was laying on the floor but after they helped me up, I did. When I got up I was all wet and the water, I guess, run from there. I was close enough to it, like I say, to put my hand on it.

MR. MARTIN: OBJECTION to the conclusion.

MOVE TO STRIKE as to where the water must have run from.

THE COURT: Do you know where the water ran from? huh?

A. From the vegetable bin.

THE COURT: OBJECTION OVERRULED.

MOTION DENIED.

The water was standing right near the vegetable bin and had run out; it was kind of a big place and starting to kinda run down. I did not see the water until I got up and I got up and I had mopped up a lot by falling, but it had run down just a little place where I didn't mop up. I could tell it had began to kinda run down. I didn't see how much it was before I fell in it. My bottom and back, and, I guess, my arm got wet; I don't know about my arm, but I remember my bottom and back.

When I got up I could tell it (the puddle of water) was pretty big from what was left, but I couldn't tell exactly how big. I know I got some of the water up, but it was a pretty big place and it had begun to kind of run down. The stream that was beginning to run down was about a foot long and the water was just standing there and then it began to run down. The reason I know it was standing there was how I got wet, but I didn't see it before I fell in it. After I got up I could tell the space; and what was left they mopped it up.

*    *    *

. . . There were frozen vegetables, food, ice cream and so forth in the vegetable bin. I didn't get to look in there that day to see what was in there but that's mostly what frozen vegetable bins carry.

On cross-examination, plaintiff testified:

[B]efore I fell, I didn't see the water, and I mean I got the water up with my body. I mean like I fell in it. So, therefore, I couldn't describe it. The place was wet. You could tell that, kinda like that, and a stream had begun to run down where I didn't get it mopped up. I saw that, and I was standing there.

The plaintiff's niece, Julia Douglas, testified on direct examination:

I saw the water that she fell in. I would say it was water. The floor covering was a light tile. The puddle of water was big enough for her to get wet the back parts of her clothing. The water was along in the area of the frozen foods. I would say it wasn't just in one place. It like maybe ran. It just wasn't water in the floor, just spill or something. I would say it maybe ran. I would say maybe it ran from under the frozen tray the unit to hold the frozen vegetables, out from under the trays, the container, whatever you call it. Because, okay, we was like at the vegetable tray, and like the water, it was just, you know, like it maybe dripped or ran into a puddle of water. It just you know, just like seeped, dripped.

Q. All right. Was there evidence of any stream of water from the vegetable bin to the puddle that you have described?

A. I would say yes.

MR. MARTIN: I OBJECT to the leading. MOVE TO STRIKE.

THE COURT: All right, do not lead her, sir. I'll let the answer stand, but, now, let me tell you this. This jury was not there. I was not there.

A. I know.

\*    \*    \*

Regarding the appearance of the water there at the point Mrs. Hill fell, all I can say, you know, it was a good bit of water. It was enough for after she fell, she wet her clothes in the back. It was approximately 1½ feet wide and 2½ to 3 feet long. I would say that part of the water she fell in was touching the base of the vegetable bin.

On cross-examination Julia Douglas testified:

> I didn't see the substance on the floor before Mrs. Hill
> fell. I saw her after she fell. I saw this liquid on the floor
> near the vegetable bin because she wet her dress. I couldn't
> say for sure it was water. I didn't test it. It was like maybe
> something dissolved and it just run and it just accumulate, it
> just piles up. That's what I'm saying. I keep confusing people,
> but I don't mean to. When something is defrosting, the more
> it defrosts or runs, the more water. That's all I'm trying to
> say. I'm not saying the water was moving or running at the
> time I saw it, like a stream or something. I said it could be
> running from under beneath.

  ·  Q. But you didn't see it actually coming out of this. It
was there close to it, but you didn't see it coming out?

A. Yes.

At the close of the plaintiff's evidence, the trial court allowed
defendant's motion for a directed verdict made on the grounds
that there was insufficient evidence to show negligence on the
part of the defendant. From this ruling the plaintiff appeals.

*Chambers, Stein, Ferguson & Becton, by Melvin L. Watt, for
the plaintiff appellant.*

*Walker, Palmer & Miller, by Douglas M. Martin, for the
defendant appellee.*

PARKER, Judge.

[1] That a store proprietor is not an insurer of the safety of
customers on his premises and that liability for injury suffered by
a customer in his store attaches only for such injuries as result
from actionable negligence on his part "is a principle of the law of
negligence so familiar and so firmly established as almost to ob-
viate the necessity of citing supporting authority." *Long v. Food
Stores,* 262 N.C. 57, 59, 136 S.E. 2d 275, 277 (1964); *see* Annot., 62
A.L.R. 2d 6 (1958). The proprietor does owe to his customers the
duty to exercise ordinary care to maintain in a reasonably safe
condition those portions of his premises which he may expect
they will use during business hours and to give warning of hidden
perils or unsafe conditions of which he knows or of which in exer-

cise of reasonable inspection and supervision he should have knowledge. *Dawson v. Light Co.*, 265 N.C. 691, 144 S.E. 2d 831 (1965); *Gaskill v. A. and P. Tea Co.*, 6 N.C. App. 690, 171 S.E. 2d 95 (1969). No inference of negligence on the part of the store proprietor arises from the mere fact of a customer's fall on the floor of his store during business hours, the doctrine of *res ipsa loquitur* not being applicable. *Hinson v. Cato's, Inc.*, 271 N.C. 738, 157 S.E. 2d 537 (1967).

> When claim is made on account of injuries caused by some substance on the floor along and upon which customers will be expected to walk, in order to justify recovery, it must be made to appear that the proprietor either placed or permitted the harmful substance to be there, or that he knew, or by the exercise of due care should have known, of its presence in time to have removed the danger or given proper warning of its presence. Thus, before plaintiff can be permitted to recover she must first offer evidence tending to show (1) negligent construction or maintenance resulting in a condition which would cause a person of ordinary care to foresee that some injury was likely to result therefrom; and (2) express or implied notice of such condition.

*Pratt v. Tea Co.*, 218 N.C. 732, 733, 12 S.E. 2d 242, 243 (1940).

[2] Applying these well established principles to the evidence in the present case, it is apparent that, even when the evidence is viewed in the light most favorable to the plaintiff, it is insufficient to take the case to the jury on an issue as to defendant's negligence. We hold, therefore, that defendant's motion for directed verdict was properly allowed.

There was no evidence from which the jury could find either what was the source of the water in which plaintiff fell or how long the water had been there. Although plaintiff testified that "the water, I guess, run from there" (referring to the vegetable bin), and that "[t]he water was standing right near the vegetable bin and had run out," it is clear from her total testimony that her statements identifying the bin as the course of the water were no more than conjectures on her part arrived at solely because of the proximity of the water to the bin. The only other witness to testify to plaintiff's fall, her niece, similarly testified that she "would say maybe it (referring to the water) ran from under the

frozen tray the unit to hold the frozen vegetables, out from under the trays, . . ." and that she "would say yes" to a leading question asked by plaintiff's counsel as to whether there was "evidence of any stream of water from the vegetable bin to the puddle." Here again, however, it is apparent that these were conclusory conjectures of the witness based solely on the proximity of the water to the bin. Moreover, even if the speculations of the plaintiff and her witness identifying the bin as the source of the water should turn out to be correct, there is no evidence as to how long the water had been there nor was there any evidence to show that the defendant knew or in the exercise of reasonable inspection should have known of its presence in time to have removed it before plaintiff stepped into it and fell. There was no evidence that the freezing components of the vegetable bin were malfunctioning in any way or that, if they were, defendant knew or in the exercise of reasonable inspection should have known that this was the case. The testimony of plaintiff's niece that the water "maybe dripped" and that "[w]hen something is defrosting, the more it defrosts or runs the more water," obviously represents no more than speculation on her part. Such conjectures as to possibilities furnish no adequate basis for a jury finding that water in fact did drip from the vegetable bin as result of defrosting and that the dripping water did accumulate on the floor over a long period of time to give defendant notice of its presence. Upon all of the evidence, the jury could do no more than speculate about the water's source and about the length of time it had been on the floor.

> In passing upon the sufficiency of the evidence the ultimate inquiry is whether it is such as might reasonably satisfy an impartial mind of the truth of the proposition sought to be proved. . . . [T]he evidence must do more than raise a suspicion, conjecture, guess, possibility or chance.

2 N.C. Evidence (Brandis rev.) § 210, pp. 152-53.

The evidence in this case is insufficient to "reasonably satisfy an impartial mind" either as to the source of the water or as to whether it had been on the floor long enough for defendant to be charged with notice of its presence.

The judgment appealed from is

Affirmed.

Judges MITCHELL and MARTIN (Harry C.) concur.