908 So.2d 771 (2005)
Linda ELSTON and Danny Elston, Appellants
v.
CIRCUS CIRCUS MISSISSIPPI, INC. d/b/a Gold Strike Casino Resort and Circus Circus Enterprises, Inc. d/b/a Gold Strike Casino, Appellees.
No. 2003-CA-02584-COA.
Court of Appeals of Mississippi.
February 15, 2005.
Rehearing Denied May 3, 2005.
Certiorari Denied August 18, 2005.
*772 Sara Bailey Russo, Daniel M. Czamanske, Clarksdale, attorneys for appellants.
John Ramsey McCarroll, Andrea Dallas McNeil, Southaven, Eugenia G. McGown, attorneys for appellees.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Linda Elston was walking in the lobby of the Gold Strike Casino in Tunica when she slipped in a puddle of water, next to some live plants. Mrs. Elston and her husband sued Gold Strike for her injuries, alleging that Gold Strike created an unreasonably dangerous condition by leaving water on the floor, or alternatively, that the water was left on the floor for a sufficient period of time as to give Gold Strike constructive knowledge of the water on the floor. The Tunica County Circuit Court granted Gold Strike's motion for summary judgment because it found that the Elstons did not present sufficient proof connecting the water on the floor to the act of the plants being watered, and because they produced no evidence to establish the length of time the water was on the floor. The Elstons appeal, raising the following issue:

WHETHER THE CIRCUIT COURT ERRED IN GRANTING GOLD STRIKE'S MOTION FOR SUMMARY JUDGMENT
¶ 2. We find that summary judgment was prematurely granted. Accordingly, we reverse and remand.

FACTS
¶ 3. Linda Elston was injured when she entered the hotel lobby of Circus Circus Mississippi, Inc., d/b/a Gold Strike Casino Resort, in Tunica. She encountered a puddle of water which caused her to slip and fall. The fall occurred in the immediate vicinity of some plants and within ten feet of the front desk. As a result of the fall, Mrs. Elston fell on her leg and popped her knee.
¶ 4. At the time of her fall, a bellman named Richard Magsby was escorting Mrs. Elston to her hotel room and pointing out the various attractions in the casino. Magsby was walking beside Mrs. Elston.
¶ 5. According to Magsby, the plants at Gold Strike are usually watered every Thursday, the day this accident occurred. These plants are usually watered some time between 10:00 a.m. and 11:00 a.m. Mrs. Elston's fall occurred between 1:45 p.m. and 2:45 p.m. Magsby is present in the lobby throughout the day and often observes the plants being watered, but he did not see the plants being watered on the day of Mrs. Elston's accident.
¶ 6. Mrs. Elston and her husband sued Gold Strike, alleging that the casino was negligent either by causing a dangerous condition, or that Gold Strike had knowledge *773 that the floor was wet and failed to remedy the dangerous condition which led to Mrs. Elston's injuries. The Tunica County Circuit Court granted Gold Strike's motion for summary judgment, finding that the only thing that had been shown is that Mrs. Elston fell on water that was present in the lobby of the casino. The judge found that the Elstons did not present any evidence beyond speculation connecting the water on the floor to the act of the plants being watered. He also found that the Elstons failed to establish that Gold Strike had knowledge of the dangerous condition, because no one saw water on the floor prior to the accident, and it had not been shown how long the water had been on the floor.

ANALYSIS

WHETHER THE CIRCUIT COURT ERRED IN GRANTING GOLD STRIKE'S MOTION FOR SUMMARY JUDGMENT
¶ 7. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." MRCP 56(c). Appellate courts apply a de novo standard in reviewing the grant or denial of summary judgment motions, making its own determinations separate and apart from the trial court. Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991). On a motion for summary judgment, a court does not try issues of fact; it can only determine whether there are issues to be tried. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1209-10(¶ 6) (Miss.2001) (citing Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)).
¶ 8. For a plaintiff to recover in a slip-and-fall case, he must show one of the following: (1) a negligent act by the defendant caused the plaintiff's injury; (2) the defendant had actual knowledge of a dangerous condition; or (3) a dangerous condition existed for a sufficient amount of time to establish constructive knowledge of a dangerous condition. Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992).

A) Whether Gold Strike Caused a Dangerous Condition
¶ 9. Mississippi law requires the owner or operator of a business to "exercise reasonable care to keep the premises in a reasonably safe condition." Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988). No proof of the owner's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority. Drennan v. Kroger Co., 672 So.2d 1168, 1171 (Miss.1996). No one disputes that the placement of the plants, the maintenance of the plants, and the maintenance of the floors are all within the control and authority of Gold Strike.
¶ 10. To prove that Gold Strike maintained its premises in a reasonably safe condition, Gold Strike's guest service manager testified as to the procedures in place to maintain the lobby area of the hotel. He explained that the hotel hires two internal maintenance employees who are responsible for policing the floor for spills and debris. These employees walk the entire lobby floor at least twice an hour. They are hired for the specific purpose of insuring that there is no debris, no stains, and no spills. These employees inspect the entire floor space in the lobby to make sure that there are no spills or stains. In addition, each employee, regardless of their job duties, is responsible for cleaning or reporting any stains, spills, or debris *774 left on the floor. The guest services manager ensures that the employees are doing their job by personally inspecting the premises. He requires that the internal maintenance manager perform the same duty.
¶ 11. Even though the procedures Gold Strike uses to maintain its lobby are adequate to keep the premises in a safe condition, these procedures do not necessarily establish that the lobby was in a reasonably safe condition on the day of the accident. On the day of the accident, no one could testify as to the last time Gold Strike's employees inspected the lobby. While all Gold Strike employees were supposed to clean spills, these employees may have breached that duty. The guest services manager was not working at the casino on the day of the fall. He had no personal knowledge of whether or not the internal maintenance employees actually performed the inspections. For this reason, a question of fact exists for the jury whether the presence of water on the floor violated Gold Strike's duty to keep its premises in a reasonably safe condition. The bellman noticed that the individuals who water the plants carry towels with them to clean up spills. This fact puts the employees on notice that the area where the plants are watered is particularly susceptible to spills.
¶ 12. Gold Strike argues that it is speculative at best to claim that the water Mrs. Elston slipped on came from the plants watered by the agents of Gold Strike. Hundreds of guests walk through the lobby each day, and Gold Strike argues that it is pure speculation that the Elstons can trace the slip-and-fall accident to a condition that Gold Strike created. We disagree with Gold Strike that the Elstons merely speculated that the water she slipped on came from the plants. No one disputes that the substance she slipped on was water, the same substance that is used to wet the plants. It is therefore unlikely that the source of the spill came from a casino guest. Mrs. Elston fell in the immediate vicinity of the plants. The casino could not identify any other possible source of water other than from the plants. The plants are normally watered on Thursdays, and Mrs. Elston's accident occurred on a Thursday.[1] We find this evidence to be beyond speculation and sufficient for a jury to conclude that Mrs. Elston's injury was caused by a dangerous condition that Gold Strike created.

B) Whether Gold Strike Had Knowledge of A Dangerous Condition
¶ 13. Gold Strike did not possess actual knowledge of a condition that caused Mrs. Elston to slip and fall. Therefore, the Elstons wish to prove their case through constructive knowledge, showing that Gold Strike should have known that there was water on the floor. To establish a negligence claim under a constructive knowledge theory, proof of the water's presence on the floor for a sufficient period of time is required. Douglas v. Great Atlantic & Pac. Tea Co., 405 So.2d 107, 111 (Miss.1981). In Douglas, the supreme court affirmed the jury's verdict in favor of the defendant because "there was not a scintilla of evidence a third party created the wet hazardous condition; moreover, there was no proof the proprietor created the wet condition." Id. at 110. In Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 286 (Miss.1986), the supreme court affirmed the trial court's decision to grant a judgment notwithstanding the verdict *775 because no evidence was produced tending to show how long the liquid was on the floor when the plaintiff slipped on it.
¶ 14. Both the Elstons and Gold Strike attempted to determine how long the water had been on the floor, but they were unable to do so. Unlike the facts in Douglas and Waller, however, the Elstons have presented more than a scintilla of evidence showing that the water had been on the floor for at least a few hours. Mrs. Elston's fall occurred on a Thursday, between 1:45 p.m. and 2:45 p.m. The plants were usually watered on Thursday some time between 10:00 a.m. and 11:00 a.m. This evidence can allow a jury to reasonably infer that the water had been on the floor for a sufficient period of time to establish that Gold Strike should have known the water was on the floor.
¶ 15. Gold Strike contends that the claim that the plants are watered only on Thursdays is speculative at best, because Magsby testified in his deposition that he merely "thinks" the plants are watered on Thursdays. We disagree. On the date of the deposition, Magsby had been an employee of Gold Strike for three and a half years and had been employed as a bellman the entire time. During Magsby's shift, when he is not assisting customers checking into the hotel, he spends his time either behind the front desk or standing in the lobby waiting for patrons. During the time period of Mrs. Elston's fall, Magsby customarily worked every day from 6:00 a.m. to 2:00 p.m. The plants are located approximately ten feet from the front desk. On this evidence, a jury could find that Magsby observed the agents of Gold Strike water the plants on many occasions both before and after Mrs. Elston fell and had the credibility to assert that the plants are watered every Thursday morning. Even though Magsby was unable to state that he was absolutely certain that the plants were watered every Thursday, the Elstons have presented enough proof to allow a reasonable jury to decide whether the water came from the plants and was present on the floor for a long enough time to establish that Gold Strike had constructive notice of a dangerous condition.
¶ 16. Negligence of the defendant and notice to him may be found from circumstantial evidence of adequate probative value. Stated differently, "the plaintiff may prove circumstances from which the jury might conclude reasonably that the condition of the floor was one which was traceable to the proprietor's own act or omission." Winn-Dixie Supermarkets v. Hughes, 247 Miss. 575, 585, 156 So.2d 734, 736 (1963). In Hughes, the store manager was in the aisle where the slip-and-fall accident occurred three to five minutes before the plaintiff fell. He said he saw no foreign objects on the floor when he was there. Yet the store manager admitted that when he went to assist Hughes after she fell, the vermicelli upon which Hughes fell was on the floor and flowing almost to the check-out stand. Like the case sub judice, the store had in place a policy requiring all employees to be alert for objects on the floor. Id. at 737. Despite the manager's testimony that he saw nothing on the floor immediately prior to the accident and the store's policy that should have prevented the accident, the vermicelli was present when the plaintiff slipped and fell. Under the evidence, the trial court was allowed to submit to the jury the issue of liability on two theories: (1) the floor condition was traceable to the proprietor's own act or (2) that the store had constructive notice of the dangerous condition, because the store manager should have seen it. Id. Like Hughes, the case sub judice presents a factual question of causation that is subject to different determinations. K-Mart Corp. v. Hardy, *776 735 So.2d 975, 983(¶ 20) (Miss.1999). These factual questions should be resolved by a jury.
¶ 17. Like the store manager in Hughes, Gold Strike's employees had ample time to observe the water on the floor, and no Gold Strike employee observed any spill on the day of the accident. The Elstons' assertion that the water had been on the floor for a sufficient length of time is supported by competent evidence. The Elstons have presented evidence showing that Gold Strike should have seen the puddle of water even if the water had been on the floor for a short period of time. The employees who investigated the accident after the fall estimated that the water was about five inches in diameter. Mr. Elston was able to see the puddle of water after Mrs. Elston fell. Mr. Elston testified that the back of Mrs. Elston's clothes was covered in water when she fell. He estimated that there was about half of a cup of water on the floor, and the puddle was deep enough that a person could feel the water if he put his hand in it. When Magsby, an agent of Gold Strike, was walking beside Mrs. Elston, he came within close proximity of the water, creating a jury question as to whether he should have seen the water upon which Mrs. Elston slipped. Morrison v. St. Luke's Health Corp., 929 S.W.2d 898, 903-04 (Mo.Ct.App.1996).[2] This evidence is adequate to allow a jury to consider whether Gold Strike had constructive notice of the puddle in which Mrs. Elston fell.

CONCLUSION
¶ 18. To survive a summary judgment in a slip-and-fall case, a plaintiff must show that the defendant created an unreasonably dangerous condition, or he must show that the defendant had actual or constructive knowledge of a dangerous condition. On the evidence the Elstons have presented, a jury may conclude that Gold Strike was negligent, because it created a dangerous condition, and/or because it had constructive notice of the puddle of water upon which Mrs. Elston fell. Because we find that the Elstons presented enough evidence to show that there are genuine issues of material fact regarding the liability of the defendant, we reverse and remand to the circuit court.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY MYERS AND BARNES, JJ.
GRIFFIS, J., dissenting:
¶ 20. I respectfully disagree with and dissent from the majority's finding.
¶ 21. The trial court correctly granted summary judgment because the Elstons did not establish a prima facie case against Gold Strike. The trial court found that there was not sufficient evidence of the source of the water. I agree. The only testimony is from Mrs. Elston that she *777 "presumed" she slipped in water from the plants. Mrs. Elston's testimony is not based on her personal knowledge, and it is her speculation at best. The trial court also found no facts that would establish that Gold Strike caused a dangerous condition or that Gold Strike had either actual or constructive knowledge of any hazard. I agree with the learned trial judge.
¶ 22. A business owner owes a business invitee a duty of ordinary care to keep the business premises in a reasonably safe condition. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 285 (Miss.1986). The owner has a duty to warn invitees of dangerous conditions which are not apparent to the invitee, of which the owner or occupier knows or through the exercise of reasonable care should know. Id. The owner is not an insurer against all injuries which may occur on the premises. Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988).
¶ 23. In Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992), the supreme court established the standard by which a plaintiff may recover in a slip and fall case:
[A plaintiff] must show the proprietor had actual knowledge of a dangerous condition, or the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, or the dangerous condition was created through a negligent act of a store's proprietor or his employees.
A plaintiff may proceed under any of the three alternatives. Nevertheless, the plaintiff must offer some credible evidence to create a genuine issue of material fact in dispute about the defendant business owner's liability.

A. Whether Gold Strike caused a dangerous condition.
¶ 24. One theory of recovery, argued by the Elstons, is that the water was present due to the negligence of Gold Strike. "When the dangerous condition is traceable to the proprietor's own negligence, no knowledge of its existence need be shown." Waller, 492 So.2d at 285. However, in Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916, 917 (Miss.1966), the court held:
[P]roof merely of the occurrence of a fall on a floor within business premises is insufficient to show negligence on the part of the proprietor. Proof that the floor on which the fall occurred had present thereon litter and debris is similarly insufficient; and the doctrine of res ipsa loquitur is inapplicable in cases of this kind.
¶ 25. A question of fact does not exist simply because water was on the floor. The Elstons offered no credible evidence to establish that Gold Strike caused the water to be on the floor. The testimony of a doorman that he "thinks" the plants are usually watered on Thursday between 10:00 and 11:00 a.m. (the accident occurred between 1:45 and 2:45 p.m.) certainly cannot be characterized as direct or conclusive evidence that the water came from the plants. The doorman admitted that he did not see the plants watered the day Mrs. Elston fell. Mrs. Elston testified that she "presumed" the water came from the plants. The Elstons' response to the motion for summary judgment included the excerpts of several depositions, and no one testified that the water came from the plants.
¶ 26. The majority recognizes that "hundreds" of guests walk through the Gold Strike lobby every day. It is just as plausible, yet speculative, that one of the guests spilled water they were carrying as it is that water leaked from the plants. Mrs. Elston's and the doorman's testimony is indeed speculative. The jury's role is to consider the relevant and credible facts *778 and then decide the case based on the law. It is a search for truth. The jury may not hold a defendant liable and award damages based on speculation alone. The evidence presented here indicates that there are no genuine issues of a material fact in dispute and that Gold Strike is entitled to a judgment as a matter of law that it did not cause a dangerous condition (i.e. the water) to be on the floor of the lobby.

B. Whether Gold Strike had knowledge of a dangerous condition.
¶ 27. If the presence of a dangerous condition is due to the act of a third party, the plaintiff must show that the defendant had actual or constructive notice of the hazard. Douglas v. Great Atl. & Pac. Tea Co., 405 So.2d 107, 110 (Miss.1981); Millers of Jackson, Meadowbrook Road, Inc. v. Newell, 341 So.2d 101, 102 (Miss.1977). The majority agrees that there is no evidence that Gold Strike had any actual knowledge that water was present in its lobby. The Elstons presented no proof in the record that any employee of Gold Strike knew that the water was present. Gold Strike's Guest Services Manager testified that Gold Strike employees periodically walked the premises, including the lobby, to inspect the floor and report any spills. If any were found, they would have the spills cleaned up. Thus, the only theory upon which the Elstons could rely is whether Gold Strike had constructive knowledge of a dangerous condition which caused Mrs. Elston to slip and fall.
¶ 28. To rely on the doctrine of constructive notice, the plaintiff must establish that the dangerous condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have known of it. Douglas, 405 So.2d at 110. Here again, there is simply no evidence to support a finding of constructive notice. The majority determines that there is "more than a scintilla of evidence showing that the water had been on the floor at least a few hours." I disagree.
¶ 29. The doorman testified that he "thinks" the plants were watered on Thursdays, and they will water the plants between 10:00 and 11:00 a.m. He did not testify that he saw the plants being watered that morning. He did not even testify that watering the plants usually or ever causes puddles of water on the lobby floor. Instead, he stated that the individual who waters the plants also has a towel to clean up any spills.
¶ 30. The majority has taken this testimony of what is possible or might have happened (the plants may have been watered between 10:00 and 11:00 a.m.) and pieces it with what did happen (Mrs. Elston fell between 1:45 and 2:30 p.m.) to conclude that a jury could infer that the water had been on the floor a sufficient time to provide Gold Strike notice of its existence. This is conjecture and speculation. Accepting the testimony in the record, it is equally plausible that the jury could conclude that another patron spilled water immediately before Mrs. Elston fell. The question is not what the jury could infer but whether there any credible evidence to support the jury's decision.
¶ 31. The majority attempts to distinguish Douglas and Waller, but relies on Mississippi Winn-Dixie Supermarkets v. Hughes, 156 So.2d 734, 736 (Miss.1963) and Morrison v. St. Luke's Health Corp., 929 S.W.2d 898, 903-04 (Mo.Ct.App.1996). I disagree with the majority's analysis of these cases and application of legal principles.
¶ 32. In Douglas, Ms. Douglas went to the A & P for groceries. Douglas, 405 So.2d at 108. She was standing near the frozen food case with a basket full of groceries when she slipped and fell on something *779 wet. Id. After she fell, the store manager saw "about a gallon or so of water on the floor adjacent to the frozen food case. He did not know how long the water had been there, but was sure it came from the frozen food case." Id. The store manager also testified that his accident report stated that the water on the floor was caused by the "frozen food case leaking water on the floor." Id. He further testified that the floor was cleaned approximately six hours before the accident, and he regularly walks the aisles each day. Id. The morning of Ms. Douglas' fall, he stated that he walked the store about six to eight times. Id. His last trip down that aisle was about and hour and a half before Ms. Douglas fell. Id. at 108-09. Before Ms. Douglas' fall, the frozen food case had not leaked. Id. at 109.
¶ 33. The supreme court concluded:
Here there was not a scintilla of evidence a third party created the wet hazardous condition; moreover, there was no proof the proprietor created the wet condition. Thus it was the plaintiff's burden to prove either actual or constructive notice on the part of the proprietor of the dangerous wet condition of the floor in front of the frozen food case....
It is possible to reasonably infer from circumstantial evidence presented at trial that the water originated from the adjacent frozen food case; however, even if this be so, proof of the water's presence on the floor for a sufficient amount of time to give reasonable notice to the proprietor is required. This the appellant did not prove. A similar case to the present is Hill v. Allied Supermarkets, Inc., 42 N.C.App. 442, 257 S.E.2d 68 (1979) where plaintiff slipped and fell on some water next to a vegetable bin in a supermarket. There was no evidence to indicate the source of the water or how long the water had been there, and plaintiff's testimony that she guessed the water came from the vegetable bin was viewed by the North Carolina Court as speculation and conjecture. In affirming the directed verdict for the proprietor, that court reasoned as follows:
Moreover, even if the speculations of the plaintiff and her witness identifying the bin as the source of the water should turn out to be correct, there is no evidence as to how long the water had been there nor was there any evidence to show that the defendant knew or in the exercise of reasonable inspection should have known of its presence in time to have removed it before plaintiff stepped into it and fell. There was no evidence that the freezing components of the vegetable bin were malfunctioning in any way or that, if they were, defendant knew or in the exercise of reasonable inspection should have known that this was the case. The testimony of plaintiff's niece that the water "maybe dripped" and that "(w)hen something is defrosting, the more it defrosts or runs the more water," obviously represents no more than speculation on her part. Such conjectures as to possibilities furnish no adequate basis for a jury finding that water in fact did drip from the vegetable bin as result of defrosting and that the dripping water did accumulate on the floor over a long enough period of time to give defendant notice of its presence. Upon all of the evidence, the jury could do no more than speculate about the water's source and about the length of time it had been on the floor. 257 S.E.2d at 71.
While it is quite true the frozen food case was under the superior control of the A & P, we recognize the well settled *780 rule which disallows the application of the doctrine of res ipsa loquitur to slip and fall cases.
Douglas, 405 So.2d at 110-11. [citations omitted.]
¶ 34. Just as in Douglas, the testimony of neither Mrs. Elston nor the doorman is sufficient to furnish an adequate basis for the jury to find that Gold Strike caused the presence of the water or occurred over a long enough period to give Gold Strike notice of its presence.
¶ 35. In Waller, the supreme court determined that the evidence was insufficient to support a jury verdict. Waller, 492 So.2d at 286-87. Mr. Waller slipped and fell at the Piggly Wiggly Supermarket of Taylorsville. Id. at 284. He testified that "he slipped in a puddle of pink liquid he estimated to be eight to ten inches in diameter." Id. The store manager testified that he waxed the floors early that morning but did not use a pink liquid. Id. at 285. He also testified that he and his assistants regularly walked the aisles and he last walked the aisles at 10:00 a.m. Id. The accident happened at 12:30 p.m. Id. The jury awarded Mr. Waller $44,100, and the trial judge granted a judgment notwithstanding the verdict. Id. The trial judge found:
In this case there is no evidence as to what the object or substance was or how it got there. There is also no evidence as to how long the object or substance had been on the floor. The only evidence as to whether or not the defendant knew that the object or substance was on the floor was testimony offered by the defendant that he did not know that the object or substance was on the floor.
Id. The supreme court agreed and held:
Did the manager have actual notice of the spill or did the spill exist for such a length of time that the manager should have known of it through the exercise of reasonable care?
There was no evidence at trial that Phillip Skinner or any of his employees knew of the spilled liquid. To the contrary, Phillip Skinner testified that nothing regarding the spilled liquid had been brought to the store's attention before the allegations made by Mr. Waller. Additionally, there was no evidence tending to prove how long the pink liquid had been on the floor when Mr. Waller slipped in it. To establish a negligence claim in a slip and fall case, proof that the liquid's presence on the floor for a sufficient amount of time to give reasonable notice to the proprietor is required. Douglas v. Great Atlantic & Pacific Tea Co., 405 So.2d at 111.
The only time frame established during the trial was that Phillip Skinner personally inspected the aisles at 10:00 a.m. and that Mr. Waller slipped in aisle three at 12:30 p.m. If the evidence is taken in the light most favorable to the appellant, there was a two and one-half hour lapse between the last documented inspection by Mr. Skinner and the fall of Mr. Waller. Is proof of a two and one-half hour time lapse sufficient to prove how long the liquid had been in the aisle? This Court holds that it is not.
A similar question was addressed by this Court in Aultman v. Delchamps, 202 So.2d 922 (Miss.1967). In Aultman, the appellant unsuccessfully relied on the presumption that the store had opened at 8:00 a.m. and that the object she slipped on at 9:30 a.m. had been on the floor of the store for one and one-half hours. The Court responded:
It does not follow that because the store opened at eight o'clock that at precisely that time some person threw the dark object on the floor. It is just logical to assume that the object was *781 thrown there two or three minutes before she stepped on it, and such a presumption is not sufficient to sustain a recovery on the theory that the object had been placed there and remained there for a sufficient length of time so that the appellee by the exercise of reasonable care should have known of the dangerous condition and removed the object from the floor.

Aultman v. Delchamps, 202 So.2d at 924.
Likewise, in the present case, it is just as logical to presume the liquid was spilled at 12:29 p.m. as it is to presume the liquid was spilled at 10:01 a.m. The former presumption is even more credible in light of Phillip Skinner's testimony that the liquid did not appear smeared and it did not appear as if anyone had pushed a buggy through it. Therefore, this Court does not believe the time lapse was sufficient to prove the length of time the liquid had been in the floor.
Waller, 492 So.2d at 286 (Emphasis added).
¶ 36. Thus, the supreme court has held that lapse of two and one-half hours was insufficient standing alone to prove how long a puddle of pink liquid had been on the floor. Id. The dangerous condition could have occurred at the beginning of the time frame or just before the plaintiff came into contact with the condition. Id.; see also Aultman, 202 So.2d at 924 (not logical to assume that a dangerous condition occurred at the beginning, rather than the end, of a given time frame). Thus, the court held that the trial judge correctly granted a judgment notwithstanding the verdict because the only way that a jury could have found against the defendant would be "through unreasonable speculation." Waller, 492 So.2d at 286.
¶ 37. Just as in Waller, Mrs. Elston's testimony that she "presumed" the water came from the plants and the doorman's testimony that the plants are usually watered on Thursdays between 10:00 and 11:00 a.m. does not furnish an adequate basis for the jury to find that the water had been on the floor for a long enough period to give Gold Strike notice of its presence.
¶ 38. In Hughes, Mrs. Hughes slipped and fell "on some dry vermicelli (edible paste smaller than spaghetti)." Hughes, 156 So.2d at 735. The jury awarded her $40,000, and the supreme court affirmed. Id. Mrs. Hughes went to look for rice when she slipped on some vermicelli that had fell on the floor from a damaged package on the shelf. Id. at 737. The store manager testified that the package of vermicelli was on the floor but other evidence indicated that the package was on the shelf after her fall. Id. A witness testified that the package "looked as if `it either had been cut by a case opener or gouged by a long finger nail.' His `judgment' was `that it was cut.'" Id.
¶ 39. The trial court reviewed the evidence based on the theory that Winn-Dixie caused the dangerous condition or had constructive notice. Id. First, the supreme court determined that there was a reasonable basis for the jury to trace the dangerous condition to Winn-Dixie's own act. Id. The court concluded that the evidence allowed a reasonable inference that "the damaged package of vermicelli was cut by the case-opening knife, when the original container was opened, and was placed on the shelf in that condition." Id. Thus, the jury could have determined that the package was cut by a Winn-Dixie employee then placed on the shelf. Id.
¶ 40. Next, the court determined that the jury could have reasonably concluded that "the vermicelli was on the floor at the time [the store manager] Glass was checking *782 the stock in that aisle about five minutes before the fall, and he simply overlooked it, and the damaged package was either on the shelf or floor at that time; that in the exercise of reasonable diligence, Glass should have seen it, recognized the danger it presented, and should have removed it." Id. Thus, the jury could reasonably infer that the store manager was negligent in not observing the vermicelli on the floor when he was on the aisle moments before. Id. at 737-38. Also, the court considered testimony from a cashier who stated that, at approximately the same time as the fall, she then saw some children walk "past the check stand with loose `spaghetti' in their hands." Id. at 738. From this evidence, the jury could have determined that this was sufficient notice of the dangerous condition and the cashier was negligent by not "investigating further the source of the `spaghetti' and determining whether any more of it was on the floor, and in not notifying other employees of these facts." Id. The supreme court found that there was evidence to support liability under either theory, actual cause or constructive notice. Id.
¶ 41. In this case, there was no similar testimony. No individual could testify where the water came from. The claim that it came from watering the nearby plant is a guess, speculative at best. In Hughes, there was credible evidence to support the jury's finding that Winn-Dixie either cut the package before it was placed on the shelf, the store manager overlooked the spilled vermicelli when he walked the aisle moments before Mrs. Hughes fell, or the cashier was negligent when she learned that there may have been a spill. Id. at 737-38. Such credible evidence is simply not present here.
¶ 42. The majority also cites Morrison v. St. Luke's Health Corp., 929 S.W.2d 898 (Mo.App.E.D.1996), but declines to adopt its ruling as controlling precedent. In Morrison, a medical clinic was charged with knowledge of a dangerous condition where a patient, who was being escorted by a medical assistant, fell over an unattended briefcase in the hallway. Id. at 904. The majority cites this case for the proposition that the fact that Gold Strike's doorman had the opportunity to see the puddle of water just before the accident is a factor that the jury should consider to determine whether Gold Strike had notice of the existence of the water. Morrison is simply not the law in Mississippi.
¶ 43. Ms. Morrison was a ninety-two year old woman with vision problems and osteoarthritis. Id. at 900. She fell over the unattended briefcase when she was being guided from the waiting room to the examining room by a medical assistant. Id. at 901. There is certainly a difference between a medical assistant escorting a blind and crippled elderly patient during a visit to her physician and a doorman assisting a healthy patron through a casino lobby. Here, there is no evidence that Mrs. Elston was elderly, vision impaired or needed assistance walking through the lobby. The fact that the doorman was walking beside her is not enough to establish that Gold Strike was or should have been aware of the existence of the puddle of water.
¶ 44. The evidence presented here indicates that there are no genuine issues of a material fact in dispute and that Gold Strike is entitled to a judgment as a matter of law that it did not have actual or constructive knowledge of a dangerous condition which caused Mrs. Elston to slip and fall. For these reasons, I dissent.
MYERS AND BARNES, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Gold Strike argues that it is mere speculation that the plants were watered on Thursday. We disagree with this assertion and address this issue in a later part of this opinion.
[2] This Court recognizes that Morrison is not binding precedent, and we decline to adopt a per se rule holding that an agent who escorts another individual through a dangerous condition is on notice of an unreasonably dangerous condition. Nevertheless, the fact that Magsby had the opportunity to see the puddle of water immediately prior to the accident is a factor the jury can consider in deciding whether Gold Strike should have seen the puddle of water.