# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00376-COA

**KIMBERLY SMITH HORNE**                                        **APPELLANT**

**v.**

**DOLGENCORP LLC**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2024 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL M. CZAMANSKE JR. |
| ATTORNEYS FOR APPELLEE: | NICHOLAS KANE THOMPSON |
| | MATTHEW D. MILLER |
| | RACHEL ELIZABETH GHOLSON |
| | ANDREA BOYLES PACIFIC |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Kimberly Smith Horne was injured after slipping and falling on merchandise in an aisle of a Dollar General store.[1]  She filed a premises liability action against Dollar General, later correcting the defending party to Dolgencorp LLC.  Dolgencorp filed a motion for summary judgment alleging no evidence existed to prove the store or its employees acted negligently to cause Horne's fall and resulting injuries.  The circuit court granted the motion for summary judgment.  Horne now appeals, arguing the fallen merchandise was evidence

---

[1] The judgment appealed from and the notice of appeal reflect a hyphenated last name for Kimberly.  She indicated in a deposition that her surname is not hyphenated and refers to herself in her brief on appeal as just "Horne."

of negligence.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2.	On October 10, 2019, Kimberly Smith Horne visited the Dollar General store in Decatur, Mississippi.  While she was "engage[d] in her regular shopping[,] . . . she tripped over some merchandise that was out in the aisle" and was injured.  The merchandise was a costume dress.  On April 7, 2022, Horne filed a personal injury complaint against Dollar General Corporation in the Newton County Circuit Court.  Her alleged injuries and damages included "medical bills and expenses, pain and suffering, loss of enjoyment of life, loss of wages and/or wage earning capacity, disfigurement, as well as permanent and temporary disabilities."

¶3.	On May 23, 2022, Dollar General filed a complete answer but first asserted it "does not own or operate the store where the incident alleged by the Plaintiff in her Complaint allegedly occurred nor does it employ any of the employees of the store."  Dollar General explained that Dolgencorp LLC was the owner, operator, and employer.  On May 31, 2022, the parties entered an agreed order substituting Dolgencorp as the defendant in the suit and dismissing Dollar General.  The order indicated that the previously filed answer and defenses, as well interrogatories and requests for production or admission, were "deemed to have been propounded by Dolgencorp[.]"

¶4.	Dolgencorp alleged in its answer to the complaint that the condition Horne claims caused her injury "was open and obvious to a person exercising due care for her own safety"

and pled the assumption-of-risk doctrine. The answer also included a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6). On March 3, 2023, the parties entered into an agreed protective and confidentiality order. On November 17, 2022, Dolgencorp took Horne's deposition. Horne specified that the merchandise she slipped on was a "blue dress" that appeared to be a "Halloween costume or a child's . . . playtime costume." She did not see the dress falling. She also stated that her right knee "took the blunt force" of the fall, and her kneecap was "shattered." Horne left the store in an ambulance and later had surgery on her right knee.

¶5.     On September 13, 2023, Horne took Dolgencorp's deposition, which was provided by David Everidge, the store manager. *See* M.R.C.P. 30(b)(5)-(6). Everidge was present at the store on the day of Horne's fall and stated when he found her on the ground in the aisle, he "could tell that her kneecap was kind of displaced." He did not know how or when the dress fell to the ground. Everidge stated that "within at least 30 minutes before this happened [he] had walked through this aisle of the store, and there was nothing on the ground there."

¶6.     On January 25, 2024, Dolgencorp filed a motion for summary judgment. On March 7, 2024, the court held a hearing on Dolgencorp's motion for summary judgment. Counsel for Dolgencorp recounted the facts of the accident as follows:

> She goes down the - - I guess you would call the seasonal party supply aisle where they, at that time, had children's Halloween costumes displayed. One of these displays was a box card board box that's clipped onto the side of the shelf at the end of the aisle that had a bunch of little girls princess dress costumes hung up in it. This display comes to the store as a box with dresses in it; they tear the front off the box; they hang the box up; and the dresses are

3

hung inside the box on a peg. Unbeknownst to anyone, one of those dresses had fallen on the floor[.]

Horne then slipped on the dress that had fallen into the aisle. She argued that Dollar General failed to "put the box up correctly" and that the question of whether the store "maintain[ed] its premises in a reasonabl[y] safe condition" was a question for the jury to determine. Dolgencorp disagreed, stating Horne had failed to present any evidence of negligence.

¶7.    On March 22, 2024, the circuit court entered an order granting summary judgment in favor of Dolgencorp.[2]  The order noted that there was no dispute between the parties that Horne was a business invitee of the store and that the costume dress on the floor was a dangerous condition. Instead, Horne sought to prove Dolgencorp's "[(1)] negligent act or omission in incorrectly hanging the dress display caused [the] accident, [(2)] th[e] cashier's proximity to the dress display gave them actual knowledge of the dangerous condition, [or (3)] that the dress had been in the aisle long enough to give [Dolgencorp] constructive knowledge of the dangerous condition." All three of these circumstances are avenues by which a plaintiff may succeed on a premises liability claim. *See McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010) (citing *Jacox v. Circus Circus Miss. Inc.*, 908 So. 2d 181, 184-85 (¶7) (Miss. Ct. App. 2005)).

---

[2] On March 4, 2024, before summary judgment was granted, Dolgencorp filed a motion in limine for documents and evidence not produced during discovery; medical testimony from a lay witness; evidence of "other areas and conditions in store"; "incorrect standards of care and other legal standards"; statements and arguments concerning the "Golden Rule"; questions and arguments implicating the "Reptile Theory"; and "non-existent and/or missing evidence." Horne filed a response to the motion on March 18, 2024.

¶8. The order addressed the assertions individually. First, "there [wa]s no evidence before the [c]ourt that a negligent action caused the dress to fall into the aisle." Neither Horne nor the store manager knew how the dress fell onto the floor, which they stated in their depositions. Second, the store manager "testified that while the fall occurred in relatively close proximity to the cash register, his view of the aisle was blocked by display racks," meaning there was no evidence to show actual knowledge. Finally, although Horne alleged the "last recorded safety inspection of the premises occurred . . . five full hours before the accident[,]" Everidge stated in his deposition that he performed an inspection "thirty minutes" prior to the accident. Even so, the judge noted "the amount of time that has passed since an inspection is irrelevant" without any evidence. For these reasons, the judge granted summary judgment in favor of Dolgencorp. On March 28, 2024, Horne filed a notice of appeal.

## STANDARD OF REVIEW

¶9. "When reviewing a lower court's decision to grant summary judgment this Court will employ a de novo standard of review." *Smith v. Franklin Custodian Funds Inc.*, 726 So. 2d 144, 146 (¶6) (Miss. 1998) (citing *Moore ex rel. Benton Cnty. v. Renick*, 626 So. 2d 148, 151 (Miss. 1993)). "A de novo review of a case requires that we examine all evidence in the record in a light most favorable to the non-moving party." *Id.* "The party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a

5

matter of law." *Daniels v. GNB Inc.*, 629 So. 2d 595, 600 (Miss. 1993) (citing *Skelton v. Twin Cnty. Rural Elec.*, 611 So. 2d 931, 935 (Miss. 1992)). "The non-moving party cannot sit back and produce no evidence." *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶3) (Miss. Ct. App. 2003). Instead, "[t]o survive summary judgment, the non-moving party must offer '**significant probative evidence** demonstrating the existence of a triable issue of fact.'" *Id.* (emphasis added) (quoting *Young v. Wendy's Int'l Inc.*, 840 So. 2d 782, 784 (¶3) (Miss. Ct. App. 2003)).

## ANALYSIS

¶10.    "In a premises-liability action, the plaintiff must prove the familiar elements of duty, breach of duty, [causation], and damages in order to establish a prima facie case." *McCullar*, 50 So. 3d at 1011 (¶11) (citing *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994)). This Court must first determine what duty, if any, was owed in this case. Here, neither party disputes that Horne was classified as an invitee, "a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *McSwain v. Sys. Energy Res. Inc.*, 97 So. 3d 102, 107 (¶11) (Miss. Ct. App. 2012) (quoting *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1003 (¶9) (Miss. 2001)). "An owner or operator of a business . . . owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which [the] owner or occupant knows of, or should know of, in the exercise of reasonable care." *Robinson v.*

6

*Ratliff*, 757 So. 2d 1098, 1101 (¶8) (Miss. Ct. App. 2000) (quoting *Fulton v. Robinson Ind.*, 664 So. 2d 170, 175 (Miss. 1995)).

¶11.    So, the question before us is not whether Dolgencorp owed Horne a duty but, rather, whether that duty was breached.  First, Horne must show that the fallen costume dress was "a dangerous condition." *McCullar*, 50 So. 3d at 1012 (¶13) (citing *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (¶10) (Miss. Ct. App. 2010)).  Both parties in this case agree that the fallen dress in the aisle was a dangerous condition.[3]  So Horne must now show: "(1) a negligent act by the defendant caused the dangerous condition; or (2) the defendant had actual knowledge of the dangerous condition but failed to warn the plaintiff; or (3) the dangerous condition remained long enough to provide the defendant with constructive knowledge." *Id.* (citing *Jacox*, 908 So. 2d at 184-85 (¶7)).

¶12.    To begin, we address whether Horne successfully proved that a genuine issue of material fact existed regarding the negligence of the store contributing to the dress falling into the aisle.  The *McCullar* case recounts Wallace, Frances, and Ruth McCullar sharing a hotel room at Sam's Town Casino located in Tunica.  *Id.* at (¶2).  Both Wallace and Ruth used the room's shower one morning without incident.  *Id.*  However, when Frances went to

---

[3] The circuit judge's final order granting summary judgment acknowledges that neither party disputed whether the dress was actually a dangerous condition.  Neither party disputes the dress as a dangerous condition in their briefs before this Court; however, Horne appears to attempt to extend that condition to the display from which the dress fell, too.  There is no evidence that the display was put together negligently because there is no testimony to establish which employee of the store actually put the display together.

7

use the bathroom, "water suddenly flowed down from the ceiling above the bathtub" and "began leaking." *Id.* at (¶¶2-3). Frances "fell to the floor and suffered a broken hip." *Id.* She was hospitalized and later died. *Id.* at (¶3). Wallace filed a wrongful death complaint against Sam's Town under a theory of premises liability. *Id.* at 1011 (¶¶8, 11). A hotel employee responsible for repairing plumbing issues indicated the source of the leak was likely a broken seal in the bathroom's plumbing mechanism. *Id.* at (¶6).

¶13. A Sam's Town corporate representative testified "he did not know whether the plumbing that leaked into the ceiling . . . had been inspected or repaired on any prior occasion." *Id.* at (¶7). He further stated that while the corporation annually conducted inspections, "he was unsure whether the plumbing in the bathroom ceilings" was routinely inspected. *Id.* Sam's Town filed a motion for summary judgment, which the circuit court granted, reasoning that "McCullar failed to show Sam's Town had actual or constructive notice of a dangerous condition." *Id.*[4] On appeal, McCullar argued Sam's Town "failed to properly inspect, maintain, and/or construct the bathroom facilities in the McCullars' room." *Id.* at 1012 (¶15). This Court found "no evidence of an affirmative act by Sam's Town that created a dangerous condition[,] . . . no evidence to show that Sam's Town had prior notice of the leak[,]" and no evidence to "show any act by Sam's Town that caused the leak." *Id.* at 1013 (¶18).

_____

[4] Proximate cause was a question in *McCullar*, as well. *McCullar*, 50 So. 3d at 1010-11 (¶¶4-8). For brevity, those portions of the case are not discussed here.

¶14. The Court emphasized that "[b]usiness owners are **not strictly liable for injuries occurring on the premises**, nor are they insurers of their invitees' safety." *McCullar*, 50 So. 3d at 1012 (¶14) (emphasis added) (citing *Martin v. Rankin Circle Apartments*, 941 So. 2d 854, 864 (¶45) (Miss. Ct. App. 2006)). "And mere proof that a slip and fall occurred is insufficient to show negligence on the part of the proprietor." *Id.* (quoting *Jacox*, 908 So. 2d at 184 (¶7)). Similarly here, the only "proof" of any negligence on Dolgencorp's part was the actual slipping and falling that caused Horne's injuries. There is no evidence showing that the store created the condition or acted to cause the dress to be on the floor in the aisle, and there is no evidence to show that the store had prior notice of the dress falling in the first place. To hold Dolgencorp liable for Horne's injuries here would be holding a storefront strictly liable for injuries occurring on the premises without any evidence of negligence; that is simply not the law. *See id.* at 1012 (¶14). As such, Horne did not show a genuine issue of material fact existed as to whether Dolgencorp created the condition. Similarly, there has been no evidence presented showing that Dolgencorp had actual knowledge that the dress had fallen into the aisle.

¶15. As for constructive knowledge, the Mississippi Supreme Court issued an opinion about a slip-and-fall in 2023, where Dolgencorp was also (coincidentally) a party. *Dolgencorp LLC v. Payton*, 366 So. 3d 838 (Miss. 2023). Payton slipped and fell after encountering "Carpet Fresh powder on the floor of the main aisle of a Dollar General store[.]" *Id.* at 839 (¶1). Payton filed a premises-liability action against Dolgencorp, and

9

Dolgencorp filed a motion for summary judgment. *Id.* at 840 (¶3). The trial court denied the motion, and Dolgencorp appealed. *Id.* The supreme court reversed that ruling on appeal, finding that Payton had failed to produce "sufficient evidence to establish an essential element of her slip-and-fall claim—that the dangerous condition existed long enough to establish constructive knowledge" on Dolgencorp's part. *Id.*

¶16. The supreme court explained that "[t]o support a slip-and-fall case based on alleged constructive knowledge of the presence of a dangerous substance on a shopping aisle floor, a plaintiff like Payton **must present proof of the substance's presence on the floor for a sufficient amount of time to give reasonable notice to the proprietor**." *Id.* at 842 (¶16) (emphasis added) (quoting *Waller v. Dixieland Food Stores Inc.*, 492 So. 2d 283, 286 (Miss. 1986)). The supreme court found "no evidence of a minimal amount of time the substance must have been there beyond the less-than one minute Payton was in the store." *Id.* at 843 (¶20). "One would have to wholly speculate—without any evidence to back it up—that the Carpet Fresh had been there long enough to establish constructive knowledge." *Id.* "[T]his Court has been clear that such a presumption is not sufficient to prove the condition existed long enough to establish constructive knowledge." *Id.* (citing *Waller*, 492 So. 2d at 286; *Aultman v. Delchamps*, 202 So. 2d 922, 924 (Miss. 1967)). This scenario is precisely the same one Horne is in when trying to have summary judgment reversed. **No one** knows how, why, or when the costume dress ended up on the aisle floor, and any conclusion would be "wholly" based on "speculat[ion]." *Id.*

10

¶17.    Horne contends, however, that there is enough "circumstantial evidence" to support her claim.  It is true that the "negligence of the defendant and notice to him may be found from circumstantial evidence of adequate probative value." *Miss. Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 156 So. 2d 734, 736 (1963).  The plaintiff in *Hughes* slipped on "some dry vermicelli" while visiting a grocery store. *Id.* at 735.  She stated that the pasta had fallen to the floor "from a damaged package still situated on the shelf." *Id.* at 737.  A store employee stated it was his "judgment" that the package had been cut, possibly during the process of "unpacking shipments and stacking the merchandise for display" while using "sharp case cutters[.]" *Id.*   That plaintiff was able to provide evidence from her own testimony that she had seen a damaged package and from a store employee's testimony that the package of pasta appeared to have been "cut" and, thus, was likely damaged upon arrival at the store. *Id.*   She was also able to provide evidence through the store manager's testimony that he had been on that aisle "about five minutes before the fall." *Id.*  Both pieces of evidence were used for theories of liability for the jury to consider. *Id.*

¶18.    Horne's case differs entirely because she has not presented evidence concrete in any way to support her claim for premises liability.  Testimonial evidence did not point in any direction as to whether the dress had been hung negligently or the store had been negligently maintained.  That evidence also did not provide any indication of how long the dress had been on the floor before Horne fell.  Horne did not provide enough proof to establish any theory for premises liability: not that "a negligent act by the defendant caused the dangerous

11

condition; or [that] the defendant had actual knowledge of the dangerous condition but failed to warn the plaintiff; or [that] the dangerous condition remained long enough to provide the defendant with constructive knowledge." *McCullar*, 50 So. 3d at 1012 (¶11) (citing *Jacox*, 908 So. 2d at 184-85 (¶7)).

## CONCLUSION

¶19.    In sum, the evidence Horne presented simply does not measure up to the threshold of "significant probative evidence demonstrating the existence of a triable issue of fact." *Byrne*, 877 So. 2d at 465 (¶3) (quoting *Young*, 840 So. 2d at 784 (¶3)).  Accordingly, we affirm the circuit court's order granting summary judgment in favor of Dolgencorp.

¶20.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

12